24138

In the Matter of William H. EDWARDS, Sr., Respondent.

(448 S.E. (2d) 547)

Supreme Court

---

[2] Rule 501, SCACR.

*Atty. Gen. T. Travis Medlock* and *Asst. Atty. Gen. James G. Bogle, Jr.,* Columbia, *for complainant.*

*J.C. Coleman,* Columbia, *for respondent.*

Submitted June 24, 1994.

Decided Aug. 15, 1994.

*Per Curiam:*

In this attorney grievance proceeding, respondent admits that he has committed ethical violations and consents to disbarment. We accept respondent's admission to these ethical violations and disbar him.

The ethical violations committed by respondent arise from certain matters he handled in his capacity as an attorney and his subsequent refusal to cooperate with the investigation in a number of those matters. The facts are as follows:

### The Blue Cross Matter

Blue Cross and Blue Shield of South Carolina (hereinafter Blue Cross) disbursed funds to medical service providers on behalf of four group members who were involved in automobile accidents and who were represented by respondent. Respondent signed an agreement to protect the subrogation interests of Blue Cross and to collect a certain amount of funds for the clients pursuant to the subrogation agreement. Each of the cases was settled and respondent did not protect the interest of Blue Cross, not provide funds to Blue Cross as set forth in the subrogation agreement. Respondent also failed to return telephone messages and answer letters regarding the subrogation interest and demanding the funds.

As to his clients, respondent advised to of them that he would pay all of their medical bills. Although respondent retained funds from the settlements in two of the cases to pay medical bills, he failed to provide one of the clients with an itemized statement and failed to notify another if payment had been made to two of her medical providers.

Finally, when the Board of Commissioners on Grievances and Discipline (hereinafter the Board) began investigating this matter, respondent failed to respond to the Board's inquiry and failed to produce files regarding the clients involved in response to a subpoena.

*The Trans Regional Manufacturing Company Matter*

Respondent loaned sums of money to Trans Regional Manufacturing Company at a time when he and/or his law firm were acting as legal counsel to that company.

*The Girtharean Castile Matter*

Girtharean Castile was injured in an automobile accident and her son hired respondent, without her knowledge, to represent her in this matter. After an insurance adjuster began contacting Castile regarding the location of her automobile, respondent contacted the adjuster himself. After several telephone calls and letters were exchanged between respondent and the adjuster regarding the location of the automobile, the adjuster informed respondent that the insurance company would not accept a bill for storage of the automobile because of respondent's unwillingness to mitigate Castile's losses. Castile had a conference with respondent and thereafter telephoned the adjuster and gave him the location of the automobile which had been in storage for sixty days at a cost of $5.00 per day. Castile was informed that her case had been turned over to the insurance company's attorneys. She then hired another attorney, John Mason, to represent her in this matter and attempted to retrieve her file from respondent. Respondent refused to give Castile her file and continued to visit her in an effort to persuade her to return the case to him. At one point he told her that he had $15,000 to give her with no legal fees. Correspondent from Mason informing respondent that he was representing Castile and again requesting her file received no reply. Thereafter, respondent contacted the adjusting company and informed them that he planned to place a lien on any settlement proceeds paid to Castile. A settlement was eventually reached between Castile's new attorney and the insurance company for $10,500. Castile's potential settlement was reduced by the amount of the storage fees which had accumulated as a result of respondent's failure to tell the adjusting company where the automobile was located.

*The ASAP Process Service Matter*

Respondent engaged the services of ASAP Process Service in two of his cases. Respondent failed to pay for those services and neglected and/or refused to respondent to repeated bills, telephone calls, and inquiries regarding the monies owed.

Furthermore, respondent failed to reply to the grievance filed with the Board in this matter.

### The Lila Mae Jones Matter

Lila Mae Jones retained respondent to represent her in a possible medical malpractice action. Jones gave respondent $800 that he told her was necessary to have someone review her medical records. Thereafter, Jones made numerous inquiries of respondent concerning the status of her case but received no reply or insufficient information. No medical malpractice suit was ever filed on her behalf, no professional was ever secured to review her medical records, and her file and monies were never returned to her. Furthermore, respondent failed to reply to the grievance filed with the Board in this matter and failed to respond to a number of letters from the Board regarding this matter.

### The Welbor Walker Matter

Welbor Walker was scheduled to be deposed at a hearing conducted by a special referee. He did not attend. The special referee called respondent and asked for his assistance in scheduling a second hearing. A second hearing was scheduled, but neither Walker nor respondent appeared. Thereafter, Judge Peeples directed that Walker appear on January 10, 1989, or risk contempt of court. Respondent accompanied Walker to the hearing on that date and acted as his attorney. However, Walker did not testify truthfully. Respondent knowingly allowed his client to present false testimony.

### The Wright Matters

Respondent represented Larry Wright d/b/a Wright's on Main, Inc. in two actions. In the first action, the opposing party filed a motion for summary judgment. A hearing was scheduled on the motion, but respondent did not appear. The judge directed that a call be placed to his office and received information that respondent was aware of the hearing but was neither in his office nor in court. The motion for summary judgment was granted. Respondent did not notify Wright of the hearing or its outcome.

In the second action, the opposing party also filed a motion for summary judgment which was granted when respondent failed to appear at the hearing. Respondent, again, did not notify Wright of the hearing or the outcome.

After summary judgment was granted in the second action, respondent filed a motion to be relieved as counsel with regard to the first action. On that same day, he filed a release signed by him and purportedly signed by Wright. The release had the civil action numbers for both suits on it. The signature of Wright, however, was forged. Both the release and the motion to be relieved as counsel were filed without the knowledge, notice or authorization of Wright.

### The Edwards' Law Firm Matter

Respondent commenced an action against his former law partners and associates for an accounting, claim and delivery, and conversion. The case came before Judge Connor on several motions of defendants. Respondent's attorneys appeared, but respondent did not. His attorneys asked to be relieved and their request was granted. An expedited hearing was set, but respondent again did not appear. At that hearing, the defendants demanded an accounting. Judge Connor issued an order finding that respondent had failed to follow her prior order to send her a list of cases received in his law firm since July 31, 1991, that respondent had not appeared, and that he had not contacted her to explain why he had not complied with her prior order. She further ruled that respondent was not entitled to any monies received from the proceeds of settlements in four cases. Finally, Judge Connor ruled that respondent had withheld sums of money in certain cases to be paid to appropriate medial providers, that that money had not been paid, and that respondent was obligated to pay those expenses.

### The Ethel Johnson Berry Matters

Ethel Johnson Berry and her mother, Alice Johnson, contacted respondent regarding the sale of some real estate owned by Johnson. Thereafter, respondent informed Berry and Johnson that Frank Robinson had an interest in purchasing the property. A purchase price of $22,000 was arranged with a $2,000 down payment and the mortgage to be financed by Johnson in the amount of $20,000. Respondent served as the closing attorney for the transaction and the property was purchased in the name of Dove Enterprises. Respondent was paid a legal fee of approximately $300 for the closing. At the time of the transaction, respondent failed to disclose to Berry

and Johnson that he and/or his wife had a substantial interest in Dove Enterprises. Johnson's mortgage was not properly recorded at the courthouse. Approximately one month later, Dove Enterprises sole the property to Dildra McKnight for approximately $45,000 with respondent serving as the closing attorney and without any disclosure to Berry and Johnson. The McKnight deed and mortgage were recorded immediately. The deed reflects Dove Enterprises as the grantor and bears what is purportedly the signature of respondent's wife as the president of Dove Enterprises. Thereafter, Robinson became delinquent in his payments to Johnson. Johnson tried to contact Robinson using the services of her attorney, respondent. Respondent prevented her from contacting Robinson concerning satisfaction of the mortgage. Berry and Johnson were then required to seek the services of another attorney who discovered that the property had been sold to McKnight. A grievance was filed by that attorney with the Board after which respondent caused the outstanding amount due on Johnson's mortgage to be satisfied with a cashier's check. In obtaining the cashier's check, respondent misappropriated and/or improperly used without permission the funds of numerous other clients.

McKnight was later unable to make mortgage payments to Dove Enterprises. Checks drawn on an account of Dove Enterprises, and signed by respondent's wife, were used to purchase cashier's checks that were applied to the indebtedness of McKnight. Respondent signed his wife's name to checks of Dove Enterprises even when he was continuing to represent to Berry and Johnson that Dove Enterprises was an entity separate from himself.

Finally, when the Board began investigating this matter, respondent was asked about the authenticity of his wife's signature which was on the deed from Dove Enterprises to McKnight. Respondent identified the signature as being that of his wife. During a later interview by investigators from the Office of the Attorney General, respondent again stated that the signature in question was that of his wife. During a subsequent interview with another investigator, respondent stated that he was "not sure," or words to that effect, that the signature was that of his wife.

### The Brenda Williams Matter

Respondent represented Brenda Williams, on behalf of herself and her two sons, Kelvin and Lennie, as a result of injuries sustained in an automobile accident. Settlements were obtained on behalf of each of the parties and for property damage. Two of the settlement checks were deposited into respondent's operating/checking account and not his escrow account or trust account. Disbursements were made of those funds from that operating account. After being interviewed by investigators from the Office of the Attorney General, Brenda Williams was contacted by respondent and, at his request, she visited his office. For the first time in the year since the settlement checks were issued, respondent informed Williams that he had reviewed her file and "found" $400 that "belonged" to a Dr. Margalit. At respondent's direction, Williams was given $400 in cash.

### The Michael Ault Matter

Respondent sent correspondence to Michael Ault describing his investment company as Dove Enterprises. That correspondence was sent before the filing of the Articles of Incorporation for Dove Enterprises with the Secretary of State and before the real estate transaction between Dove Enterprises and Alice Johnson. Thereafter, Michael and Susan Ault conveyed a residence to Dove Enterprises. The deed to Dove Enterprises bears the purported signatures of Michael and Susan Ault, witnessed by Diane Gerhard, who is a notary public in Georgia, as well as the purported signature of Frank Robinson as a witness. The deed bears a probate signed by Robinson stating under oath that he was the Aults sign and seal the deed, and that he and Gerhard witnessed the execution thereof. The probate was signed by respondent, as a notary public, although he knew that the representations made therein by Robinson were false.

Approximately on month after the purchase of the residence from the Aults by Dove Enterprises, the residence was conveyed to Charles and Marie Williams. The property then went into foreclosure and an action was brought by the holder of the mortgage against the Aults, Dove Enterprises and the Williams. Respondent allowed Dove Enterprises to default but filed an answer on behalf of the Williams.

### The Clement Agbatutu Matter

In obtaining the cashier's check referenced in the Alice Johnson matter, respondent misappropriated $3,138.50 from his client Clement Agbatutu. When Agbatutu's real estate closing date was drawing near, respondent obtained a $5,000 check from another client, Trans Regional Manufacturing Company, Inc. Responder deposited $3,181 of the check into his trust account for the Agbatutu closing and took the balance in cash.

### The Trust Account and Checking Account Matters

Respondent misappropriated client funds, improperly commingled trust funds and operating account funds, and failed to maintain the integrity of client funds or the trust account. Respondent deposited a substantial amount of funds from various clients into his operating account. On many occasions, he maintained a negative balance in his trust account.

### Failure to Cooperate with Subpoena

A subpoena was issued to respondent on May 16, 1990 seeking, among other things, the identity of all corporations of which he was a director, incorporator, or officer from January 31, 1984 to May 16, 1990. Respondent provided the names of two corporations but failed to list two other corporations of which he was a director.

The subpoena also asked respondent to identify all of his personal, business, escrow, operating and corporate accounts at NCNB during that time period. Respondent failed to disclose the existence of a trust account also at NCNB.

### The Charles Wapner Matter

Dr. Charles Wapner treated a client of respondent's. Pursuant to an arrangement, Dr. Wapner was paid for his services with a check drawn on respondent's trust account. The check was returned unpaid by the bank because of insufficient funds. After this investigation began, the monies owed Dr. Wapner were paid to him.

### The Reginald Watts Matter

Respondent represented Reginald Watts in two lawsuits. The first suit was appealed following a verdict adverse to Watts. The case was scheduled for argument before the Court of Appeals; however, respondent did not appear for the argu-

ment until after it was over. Responder did not inform Watts of the date of the argument or that he failed to appear. The second case was also argued before the Court of Appeals. Respondent appeared and argued the case but failed to inform Watts that the case had been heard by the Court of Appeals.

### The Fitzgerald Matter

Through an arrangement with respondent, Fitzgerald Neck and Back Center (hereinafter Fitzgerald) agreed to treat a number of respondent's clients with the understanding that Fitzgerald's fees would be protected when the clients' cases were settled. Respondent settled five of the clients' cases but the medical bills for those clients were either not paid or not paid in a timely manner. In an effort to collect the remainder of the fees, Fitzgerald retained the services of an attorney, W.T. Geddings, Jr. Geddings wrote a series of letters to respondent regarding several of the clients. He advised respondent that he was representing Fitzgerald and that any communication from respondent should be made directly to Geddings. Despite that instruction, respondent sent a check for one of the client's accounts directly to Fitzgerald.

### The Dr. Harry B. Rutherford Matter

Respondent sent a client to Dr. Harry B. Rutherford for dental treatment as a result of injuries incurred in an automobile accident. Respondent and his client signed an agreement with Dr. Rutherford to pay the client's expenses out of the proceeds of the settlement or judgment in the case. Respondent settled the case. However, without notifying Dr. Rutherford, respondent disbursed the settlement funds to the client without first paying Dr. Rutherford or protecting his interest.

### The Sonya Downing Matter

Sonya Downing retained respondent to represent her after she was involved in an automobile accident. She later decided to seek another attorney and requested her file from respondent. When she did not receive the file, she visited respondent and requested the file again. She was told by respondent that the insurance company had given respondent an offer on her case. Downing had not authorized respondent to settle her case nor negotiate with the insurance carrier. Downing obtained her file and hired another attorney, Sandra Dooley Parker. However, without Downing's authorization or knowl-

edge, respondent had already negotiated a settlement in her case with the insurance company for $13,750. The insurance company issued a check in that amount payable to Downing and respondent. Respondent forged, or caused to be forged, Downing's name on the check and negotiated it. However, respondent failed to return a signed release to the insurance company despite requests to do so. When Parker initiated contact with the insurance company, she was informed that the case had already been settled and a check issued. Parker wrote respondent at least three times requesting information regarding the location of the funds and an accounting thereof, but received no response. Parker thereafter filed a grievance with the Board. A review of respondent's trust account records showed a balance below $13,750 following the date he deposited the settlement check.

### The John Hayes Matter

Respondent represented John Hayes in a person injury matter which was eventually settled for $4,500. A disbursement sheet was prepared for Hayes reflecting legal fees of $1,500 and certain sums withheld by respondent to pay certain medical providers. Respondent also represented to Hayes that his automobile rental bill would be paid. Despite these assurances, respondent did not pay that bill or two of Hayes' medical providers.

### The Lizzie L. Smalls Matter

Respondent represented Lizzie L. Smalls in a matter that was settled for approximately $20,000. The retainer agreement entered into between Smalls and respondent provided for a contingency fee of $33^1/_3\%$ of the settlement. The disbursement sheet at settlement showed legal fees to respondent in the amount of $6,666.66 and other amounts retained by respondent to pay for medical bills, postage, telephone and copies. The total amount withheld was $15,604.78. Although Smalls was a Medicare recipient and some of her bills were paid by Medicare, there is no evidence that respondent contacted any of her medical providers to determine if any portion of Smalls' bills had been paid by Medicare. Despite withholding monies for payment to certain medical providers, respondent did not make those payments had Smalls was required to pay some of them herself. Upon investigation of re-

spondent's bank records, it was discovered that he deposited portions of Smalls' settlement check into his trust account, a firm account and an operating account. The firm account and the operating account were not client trust accounts.

Smalls wrote the Board a letter regarding this matter. The Board wrote to respondent, enclosing a copy of the Smalls letter and requesting a response. Respondent did not respond.

### The Patricia Harrison Matter

Respondent withheld funds from Patricia Harrison's settlement check to pay medical providers but failed to pay one of the providers.

### The Sheila J. Hyder Matter

Respondent withheld funds from Sheila J. Hyder's settlement check to pay medical providers but failed to pay many of the providers and paid another provider only after the provider obtained an attorney to collect the amount owed.

Hyder filed a grievance with the Board. A copy of the grievance was forwarded to respondent and a response requested. Respondent failed to respond.

### The Dennis M. Gerald Matter

Dennis M. Gerald was asked by respondent to serve as conservator for a minor. The minor received settlement funds of $15,000 and $5,000. Respondent asked Gerald to endorse the $15,000 insurance company check and he did so. Respondent did not ask Gerald to endorse the $5,000 check; however, respondent caused Gerald's name to be endorsed thereon and negotiated the check. Gerald assumed that the settlement was only $15,000 until he received a copy of the disbursement sheet showing a total settlement of $20,000. Gerald made inquiries of respondent concerning the additional $5,000 and learned that respondent had allowed Gerald's name to be endorsed on the check without authority.

### The Dr. John M. Gardner Matter

Dr. John M. Gardner was provided a Doctor's Lien signed by respondent to protect the doctor's fees for the treatment of one of respondent's clients. The client's case was settled and the settlement check delivered to respondent; however, Dr. Gardner was never paid.

## The Preston W. Brown, Jr. Matter

Respondent withheld funds from Preston W. Brown, Jr.'s settlement check to pay medical providers but failed to pay any of the providers.

## The Sheila Pendergrass Matter

Respondent filed a document with a medical provider agreeing to protect its fee for the treatment of his client, Sheila Pendergrass. Pendergrass' case was settled and the settlement check issued to respondent; however, the medical provider was never paid.

## CONCLUSION

Respondent has violated Rules 1.1 and 1.3 of the Rules of Professional Conduct contained in Rule 407, SCACR, by failing to diligently and competently represent the interests of his clients. In violation of Rule 1.4, respondent also failed to keep clients informed of the status of their cases. In addition, respondent had violated Rules 1.7, 1.8 and 1.9, which address conflicts of interest, in the real estate transactions addressed herein. Respondent failed to notify clients of the receipt of funds in their cases and failed to maintain the integrity of those funds in violation of Rule 1.15. Respondent also violated Rule 1.15 by failing to notify medical providers of the receipt of funds in cases and by failing to deliver those funds as agreed. By assisting a client in presenting false testimony, respondent violated Rules 3.3 and 3.4. In his representation of a number of clients, respondent knowingly made false statements of material fact both to clients and to third parties in violation of Rule 4.1. Respondent also violated Rule 8.1 by failing to cooperate with the Board in its investigation of these matters. Finally, by violating these Rules of Professional Conduct and engaging in conduct involving dishonesty, fraud, deceit and misrepresentation, respondent has violated Rule 8.4.

It is therefore ordered that respondent shall be disbarred from the practice of law in this State. Disbarment shall be retroactive to October 15, 1992, the date on which respondent was temporarily suspended from the practice of law. Readmission will be conditioned upon restitution to the clients involved herein or to the Clients' Security Fund of the South Carolina Bar. Respondent shall file an affidavit with the Clerk

of Court, within fifteen (15) days of the date of filing of this opinion, showing that he has complied with Paragraph 30 of Rule 413, SCACR.

Disbarred.

TOAL and WALLER, JJ., not participating.