24315

In the Matter of Johnny E. WATSON, Respondent.

(462 S.E. (2d) 270)

Supreme Court

*Attorney General Charles M. Condon, Assistant Deputy Attorney General J. Emory Smith, Jr. and Senior Assistant Attorney General James G. Bogle, Jr.,* Columbia, *for complainant.*

*Johnny E. Watson,* Columbia, *pro se.*

Submitted Aug. 10, 1995.

Decided Sept. 18, 1995.

*Per Curiam:*

In this attorney grievance proceeding, respondent admits that he has committed ethical violations and consents to a three (3) month suspension from the practice of law in this State. We accept respondent's admission and suspend him from practicing law in this State for three months.

The ethical violations committed by respondent arise from his representation of a client in a personal injury case resulting from an automobile accident. Respondent was hired by the client in July 1992 on a contingency fee basis. There was no written fee agreement. After hiring respondent as her attorney, the client received treatment at Columbia Rehabilitation Clinic. The client eventually accumulated medical bills totalling approximately $3,643.63, of which approximately $896.00 was owed to Columbia Rehabilitation Clinic.

In January 1994, a letter was written to the client's workers' compensation carrier, acknowledging that there existed a lien on the proceeds of any settlement, and requesting that the other driver's insurance company, Auto-Owners Insurance Company, be notified of the existence of the lien. A copy of the letter was in respondent's file.

On or about June 13, 1994, respondent settled the client's case for $18,000.00. His fee was one-third, or $6,000. On June 14, 1994, respondent wrote to the client advising her of the settlement, enclosing a handwritten settlement statement which reflected the following: Total settlement $18,000.00, less $6,000.00 attorney's fees, leaving balance of $12,000.00; less $3,643.63 medical bills, leaving a net payment to the client of $8,356.37. The letter further informed the client that respondent was withholding the full amount of medical bills due to the workers' compensation lien, and advising her that some of her bills were paid by the workers' compensation carrier. On or about June 21, 1994, respondent sent the client a check for $8,000.00, promising the balance of $356.37 when he retrieved her file from his Charleston office.

On June 21, 1993, Columbia Rehabilitation Clinic wrote respondent, advising him that the client wanted her medical bills sent to respondent, and enclosed an authorization for distribution of funds signed by the client on May 25, 1993, authorizing respondent to pay the clinic from the proceeds of any settlement in the case. Respondent did not reply to the letter. However, on June 21, 1993, respondent signed a form letter

from Columbia Rehabilitation Clinic stating that he would protect its fees in any settlement.

On or about September 19, 1993, the client moved to Atlanta. She did not pay Columbia Rehabilitation Clinic because she was awaiting word from respondent as to which medical bills he had paid.

By letters dated July 19, 1994, August 13, 1994, and September 1, 1994, the client wrote respondent requesting the balance of the funds owed her, $356.37. The September 1, 1994 letter was sent certified mail, but was returned from the post office as not having been picked up. Subsequent investigation determined the respondent "often" would not pick up certified mail.

Respondent informed a claims representative at Auto-Owners Insurance Company that he would ensure the workers' compensation carrier's lien would be satisfied. On September 15, 1994, the claims representative from Auto-Owners wrote respondent, informing him that the workers' compensation carrier had not been paid for approximately $2,294.17 it had paid to the client.

By letter dated November 11, 1994, the client complained to the Board of Commissioners on Grievances and Discipline. As of that date, she still had not received the balance of her funds from respondent, nor had Columbia Rehabilitation Clinic been paid, nor had the workers' compensation lien been satisfied.

Shortly after November 11, 1994, but prior to the Board notifying respondent on November 21, 1994, respondent was notified of existence of the client's agrievance by her personal attorney in Atlanta. On November 17, 1994, respondent wrote the client, sending her $4,000.20, which represented the $3,643.63 withheld for medical bills, plus the $356.37 "balance" owed to the client. However, prior to that disbursement, the funds in respondent's trust account fell significantly below the amount owed to the client, and at one point respondent even had a negative balance in the account.

On November 21, 1994, the Board, having received the client's complaint, notified respondent, and requested a reply within ten days. Respondent did not reply. On December 15, 1994, the Board again wrote respondent, reminding him that failure to cooperate was in and of itself a violation of the Rules of Professional Conduct, and requesting a reply. On December

26, 1994, respondent replied to the Board, informing them of the $4,000.20 payment.

The foregoing conduct constitutes misconduct in violation of Paragraph 5 of the Rules on Disciplinary Procedure and Rule 8.4(a) of the Rules of Professional Conduct, Rule 407, SCACR. More specifically, respondent has violated Rule 1.3 of the Rules of Professional Conduct, which requires reasonable diligence and promptness in the representation of clients. Respondent has also violated Rule 1.4 by failing to adequately communicate with his client. By not having a written contingent fee agreement, respondent violated Rule 1.5 Respondent's failure to safeguard the proceeds of the settlement and his failure to promptly deliver to the client the proceeds of the settlement constitute violations of Rule 1.15. Finally, respondent violated Rule 8.1 by failing to cooperate with the Board in its investigation of this matter.

It is therefore ordered that respondent shall be suspended from the practice of law in this State for three (3) months. Respondent shall file an affidavit with the Clerk of Court, within fifteen (15) days of the date of this opinion, showing that he has complied with Paragraph 30 of Rule 413, SCACR.

Definite suspension.

FINNEY, C.J., not participating.