516 S.E.2d 661

**In the Matter of Mary P. MILES, Respondent.**

No. 24949.

Supreme Court of South Carolina.

Heard April 8, 1999.

Decided June 1, 1999.

Mary P. Miles of Lexington, pro se.

Attorney General Charles M. Condon and Assistant Deputy Attorney General J. Emory Smith, Jr., both of Columbia, for the Office of Disciplinary Counsel.

## PER CURIAM:

In this attorney grievance matter, Mary P. Miles (Respondent) is charged with engaging in misconduct in violation of various provisions of the Rules of Professional Conduct (RPC) contained in Rule 407, SCACR, and the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413, SCACR.

## PROCEDURAL BACKGROUND

The Commission on Lawyer Conduct (Commission) began investigating these matters after Midlands Medical Center filed a complaint in November 1996. The Court placed Respondent on interim suspension December 10, 1997. The three-member subpanel issued a report October 22, 1998, finding misconduct and recommending that Respondent be indefinitely suspended. The full panel adopted the report and recommendation December 10, 1998.

## THE MIDLANDS MATTER

Investigators from the Office of Disciplinary Counsel (disciplinary counsel) reviewed documents provided by Midlands Medical Center in Columbia, as well as financial records and various client files from 1992 to 1997 that were subpoenaed from Respondent. The review showed that, from April 1995 to April 1997, Respondent withheld $21,304 from the settle-

ment of fourteen cases to pay clients' medical bills at Midlands. Respondent delayed payment of the bills from eight to twenty-two months after settlement of the cases. Midlands agreed to reduce the delinquent bills if Respondent did not delay payment any longer. After paying the reduced bills, Respondent failed to return $3,996 in surplus funds to the fourteen clients.

Respondent's trust account during the two-year period should have contained at least the amount of the unpaid medical bills as those amounts accumulated. It did not. For example, in February 1996, when the trust account should have contained at least $7,186, it had a negative balance of $1,050. In February 1997, when the account should have contained at least $17,804, it had a negative balance of nearly $594. The record shows that Respondent either converted the funds for her own use, to pay toward another client's matter, or for purposes other than which they were intended.

## IMPROPER USE OF TRUST ACCOUNT AND INSUFFICIENT RECORDKEEPING

Respondent used her trust account from 1992 to 1997 to make contributions to charitable organizations, buy office supplies, buy personal and office lunches, and pay off a personal loan to a car dealer, among other things. Many of the checks contained inconsistent information. For example, checks to Burlington Coat Factory, Pep Boys, Young's True Value Hardware, J.B. White, S & K Mens Wear, and Champs Sports all listed "office" or "office supplies" in the memorandum line.

Deposits to Respondent's trust account from 1993 to 1997 usually were identified only by the name of the insurance company that wrote the check. Twenty-six of the deposits were made since January 1997. Some deposits listed only the name "Miles" or were deposits of cash, and Respondent was unable to identify the source of the funds. Respondent wrote checks on her trust account made payable to herself and marked "attorney fees." The checks did not identify the client, and Respondent was unable to identify the source of the funds or show that the funds were earned fees and not clients' funds.

## THE PINCKNEY MATTER

Marvin Pinckney testified he hired Respondent in October 1997 in an effort to set aside a previous judgment in a civil suit because he had not consented to it. He paid Respondent a $1,250 retainer. Respondent filed a two-page motion in circuit court, but did no other work on his case, Pinckney testified. Respondent has not refunded any of the fee. While questioning Pinckney at the subpanel hearing, Respondent noted the retainer was nonrefundable under the fee agreement Pinckney signed.

## THE SCHULTZ MATTER

Earl W. Schultz testified he hired Respondent in July 1997 to represent him in an employment discrimination case after the Court suspended his first attorney. He paid her $25 for the initial visit and a $1,000 retainer. Respondent made a couple of telephone calls to a federal agency in Washington, D.C., during the initial visit, but did no other work on the case. His appeal was successful, but that was a result of work done by his first attorney, not Respondent, Schultz testified. Respondent refused to refund any of the fee. Again, while questioning Schultz, Respondent noted the retainer was nonrefundable under the fee agreement Schultz signed.

## UNPAID COURT REPORTER CHARGES

Clevette Hudnell, a court reporter, testified she took a deposition at Respondent's request in August 1997. She sent Respondent four notices about the unpaid bill of $299.60, but Respondent never paid her. Another court reporter, Callie Morrison, testified she took a deposition at Respondent's request in March 1996. She sent respondent four notices about the unpaid bill of $229.25, but Respondent never paid her.

## DISCUSSION

A disciplinary violation must be proven by clear and convincing evidence. *Matter of Yarborough*, 327 S.C. 161, 488 S.E.2d 871 (1997). While the Court is not bound by the findings of the subpanel and full panel, their findings are

entitled to great weight, particularly when the inferences to be drawn from the testimony depend on the credibility of witnesses. *Id.* The Court may make its own findings of fact and conclusions of law, and is not bound by the panel's recommendation. *Burns v. Clayton*, 237 S.C. 316, 117 S.E.2d 300 (1960). The Court must administer the sanction it deems appropriate after a thorough review of the record. *Matter of Kirven*, 267 S.C. 669, 230 S.E.2d 899 (1976).

After examining the facts, we find Respondent's misconduct has been proven by clear and convincing evidence. In the Midlands matter, Respondent misappropriated funds from her trust account and failed to pay the clients' medical bills upon settlement of the cases, a violation of Rule 1.15(a) and (b), RPC. By delaying payment of the medical bills from eight to twenty-two months after settlement of the cases, she failed to act with reasonable diligence and failed to keep her clients reasonably informed about the status of their cases. Those acts were violations of Rules 1.3 and 1.4(a), RPC.

In the matter of improperly using her trust account and insufficient recordkeeping, Respondent violated Rule 1.15, RPC, by commingling funds and using the trust account for personal and family purposes. Although recently enacted Rule 417, SCACR,[1] provides greater guidance in the handling of trust accounts than Rule 1.15, a lawyer has always had the burden of keeping adequate records. "This Court has made it abundantly clear that an attorney is charged with a special responsibility in maintaining and preserving the integrity of trust funds." *Matter of Padgett*, 290 S.C. 209, 349 S.E.2d 338

---

1. Under Rule 417, effective January 1, 1997, a lawyer must keep adequate records showing the date, source or payee, and description of each deposit and disbursement in any bank account which affects the lawyer's practice of law. With trust accounts, the records must show, for each client, the source of all funds deposited, the names of all persons for whom the funds are held, the descriptions and amounts of charges and withdrawals, and the names of persons to whom funds were disbursed. Rule 417(a)(1) and (2), SCACR.

Receipts must be deposited intact and records of deposits should be sufficiently detailed to identify each item. Rule 417(b), SCACR. A lawyer also must keep other records, including copies of accountings to clients or third parties showing the disbursement of funds, copies of bills for legal fees and expenses, and copies of portions of clients' files necessary to understand a particular financial transaction. Rule 417(a)(4), (5), (6) and (9), SCACR.

(1986) (suspending attorney who failed to maintain adequate records in a single case). When disciplinary counsel presents clear and convincing evidence of trust account violations or other inadequate recordkeeping, a lawyer's records must be sufficiently detailed to overcome the allegations.

In the Pinckney and Schultz matters, Respondent committed misconduct by refusing to refund any portion of the purportedly nonrefundable retainer. A "lawyer may retain a reasonable nonrefundable retainer." Rule 1.16(d), RPC. The fee, however, must be reasonable under the factors outlined in the rules and any unearned portion must be returned to the client. Rule 1.5(a) and Comments, RPC.[2]

In the Hudnell and Morrison matters, Respondent committed misconduct by refusing to pay for transcripts of depositions that she ordered from court reporters. Her conduct violated Rule 8.4(d), RPC. *See Matter of Smith,* 296 S.C. 86, 370 S.E.2d 876 (1988) (failure to pay a court reporter for a transcript held as sanctionable misconduct).

We have imposed various penalties for similar misconduct in other cases. *See Matter of Floyd,* 321 S.C. 306, 468 S.E.2d 302 (1996) (disbarring attorney who misappropriated client's funds, failed to deliver promptly to client or third party funds that he or she was entitled to receive, and failed to render promptly a full accounting of the property); *Matter of Watson,* 319 S.C. 437, 462 S.E.2d 270 (1995) (three-month definite suspension of attorney who failed in a single case to timely

---

2. Nonrefundable retainers such as the one at issue in Respondent's case have come under fire in recent years. The New York Court of Appeals recently banned "special nonrefundable retainers" in a landmark case, finding them to be a per se violation of ethics rules. *Matter of Cooperman,* 83 N.Y.2d 465, 611 N.Y.S.2d 465, 633 N.E.2d 1069 (1994).

A special nonrefundable retainer is one in which the client pays a nonrefundable fee for specific services, in advance and irrespective of whether any professional services are actually rendered. *Id.* at 1070. A special retainer is distinguished from a general retainer "in which the client agrees to pay a fixed sum in exchange for the attorney's promise to be available to perform, at an agreed price, any legal services ... that arise during a specified period." Lester Brickman & Lawrence A. Cunningham, *Nonrefundable Retainers Revisited,* 72 N.C.L.Rev. 1, 5–6 (1993); *Cooperman,* 611 N.Y.S.2d 465, 633 N.E.2d. at 1074.

While we do not decide the legitimacy of special nonrefundable retainers today, we urge lawyers to proceed with caution in using such retainers.

pay medical providers after settling the case; attorney also had misused his trust account); *Matter of Screen,* 318 S.C. 367, 458 S.E.2d 39 (1995) (publicly reprimanding attorney who negligently collected excessive fee, failed to maintain identity of client funds, failed to properly deliver funds to clients or third persons, and neglected a legal matter); *Matter of Edwards,* 323 S.C. 3, 448 S.E.2d 547 (1994) (disbarring attorney who misappropriated client funds, failed to notify medical providers of receipt of settlement and promptly disburse funds to them in numerous cases, failed to diligently and competently represent clients, failed to keep clients informed of status of their cases, knowingly made false statements of material fact, and failed to cooperate in investigation; attorney also had to make restitution).

## CONCLUSION

■ For the foregoing reasons, we find Respondent committed misconduct. We conclude the appropriate sanction is a definite suspension of six months. The definite suspension is retroactive to the date of Respondent's interim suspension, December 10, 1997, meaning Respondent may immediately resume the practice of law after complying with the following conditions. Before the reinstatement of her license to practice law, Respondent shall disburse surplus funds to clients that she received in connection with the Midlands matter, make restitution in the Pinckney and Schultz matters by refunding the unearned portion of the fees,[3] pay the delinquent court reporter charges in the Hudnell and Morrison matters, and obtain legal finance training through the Bar. Respondent shall provide appropriate proof of her compliance with this order pursuant to Rule 32, RLDE.

DEFINITE SUSPENSION.

---

**3.** If Respondent and the clients are unable to agree on what portion of the fees should be refunded, the dispute shall be submitted to the Resolution of Fee Disputes Board of the South Carolina Bar. *See* Comment to Rule 1.5, RPC; Rule 416, SCACR.