759 N.W.2d 492 (2009)
277 Neb. 16
STATE of Nebraska ex rel. COUNSEL FOR DISCIPLINE OF the NEBRASKA SUPREME COURT, Relator,
v.
Mary C. WICKENKAMP, Respondent.
No. S-07-1313.
Supreme Court of Nebraska.
January 23, 2009.
*493 John W. Steele, Assistant Counsel for Discipline, for relator.
No appearance for respondent.
*494 HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.

INTRODUCTION
The Counsel for Discipline of the Nebraska Supreme Court, relator, filed formal charges consisting of three counts against respondent, Mary C. Wickenkamp. After service, Wickenkamp did not respond to the formal charges. Relator moved for judgment on the pleadings. On May 7, 2008, this court entered judgment limited to the facts and reserved ruling on the appropriate sanction until after briefing and oral argument. After reviewing the matter, we find that the proper sanction is disbarment.

STATEMENT OF FACTS
Wickenkamp was admitted to the practice of law in Nebraska on September 22, 1980. She conducted a private practice in Lincoln, Nebraska. Wickenkamp received two prior private reprimands, on December 18, 2000, and October 30, 2003, and was previously the subject of reported discipline in 2007.
In State ex rel. Counsel for Dis. v. Wickenkamp, 272 Neb. 889, 725 N.W.2d 811 (2007) (Wickenkamp I), this court found by clear and convincing evidence that Wickenkamp had violated: Canon 1, DR 1-102(A)(1) (violating disciplinary rule), DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and DR 1-102(A)(5) (engaging in conduct prejudicial to administration of justice); Canon 6, DR 6-101(A)(3) (neglecting legal matter); and Canon 7, DR 7-101(A)(2) (failing to carry out contract of employment for professional services); as well as her oath of office, Neb.Rev.Stat. § 7-104 (Reissue 1997). This court suspended Wickenkamp's license to practice law for a 12-month period beginning on January 12, 2007. After the conclusion of her 12-month suspension on January 12, 2008, Wickenkamp did not seek reinstatement.
Formal charges were again filed against Wickenkamp on June 12, 2007. These charges give rise to the instant case. Because the conduct occurred before and after this court adopted the Nebraska Rules of Professional Conduct, certain allegations are brought under the now-superseded Code of Professional Responsibility and other allegations are brought under the rules. See State ex rel. Counsel for Dis. v. Switzer, 275 Neb. 881, 750 N.W.2d 681 (2008). Because relator was unable to obtain service of process on Wickenkamp within the required 6-month time period, the case was dismissed and relator refiled the charges on December 13. On February 14, 2008, relator asked this court for permission to serve Wickenkamp by publication. In support of this request, relator attached to its affidavit a letter from Wickenkamp which stated that she had moved from Nebraska and does not intend to practice law in Nebraska in the future.
On February 20, 2008, this court sustained relator's motion to serve Wickenkamp by publication. Wickenkamp did not respond to the formal charges. On April 15, relator moved for a judgment on the pleadings. On May 7, this court granted judgment on the pleadings as to the facts alleged in the formal charges, but directed that the case proceed to briefing and oral argument on the issue of discipline.
The formal charges, which are uncontested and make up the record in this case, involve three separate incidents. First, in 2005, Wickenkamp represented Lloyd Trackwell, Jr. (Lloyd Jr.), and the Trackwell family in the sale of a parcel of real estate to B & J Partnership, Ltd. (B & J). *495 The sale of land between B & J and the Trackwell family was to close on July 15, 2005. On July 12, B & J's in-house counsel contacted Wickenkamp and informed her that his client wanted to postpone the July 15 closing and possibly cancel the deal.
On July 13, 2005, Lloyd Jr. hand delivered a letter to a B & J principal threatening a breach of contract action if the closing did not take place on July 15. The letter further stated that any lawsuit would also contain a claim for antitrust violations that would have the potential to "`effectively eviscerate [B & J] and its holdings.'" B & J's in-house counsel e-mailed Wickenkamp stating that he had no problem with Wickenkamp's contacting a B & J principal with issues involving the contract negotiations, but that she was not to contact B & J principals directly regarding possible litigation. Wickenkamp was advised that any discussions about litigation should be directed to B & J's outside counsel. Wickenkamp replied that she would not communicate with B & J's outside counsel because she believed that he had a conflict of interest.
On July 14, 2005, Wickenkamp had a letter delivered to another B & J principal, A. Joyce Smith. The letter stated that the Trackwell family still intended to close on July 15 and went on to state possible bases for a lawsuit if B & J failed to close as agreed. On July 15, the Trackwell family and Wickenkamp appeared for the closing but B & J did not. Wickenkamp prepared a letter stating that they were at the closing and that they had expected B & J to appear. Wickenkamp had Lloyd Jr. hand deliver the letter to Smith.
On July 18, 2005, on behalf of Judith Trackwell, Wickenkamp filed a complaint in the U.S. District Court for the District of Nebraska against B & J and its representatives alleging breach of contract, tortious interference with a business relationship, and violations of federal and state antitrust laws. That same day, Lloyd Jr. personally delivered the summons and copies of the complaint to B & J's office and signed and filed returns of service indicating that he had personally served the individual defendants. Also on that same day, Wickenkamp had Lloyd Jr. hand deliver a letter to Smith accusing Smith of attempting to avoid service and stating that Wickenkamp would continue to communicate directly with Smith, because Wickenkamp believed that B & J's outside counsel had a conflict of interest. A second letter from Wickenkamp to Smith was delivered later that day by Lloyd Jr. This letter stated that "`any conveyances of property, real or person (sic) from [B & J] to any other party in an attempt to protect the assets of [B & J] will be fully prosecuted under the Nebraska Fraudulent Conveyances statutes.'"
On July 19, 2005, Wickenkamp arranged for the delivery of two additional letters directly delivered to Smith. One letter was a settlement offer, and the other letter stated that Wickenkamp was serving B & J with a subpoena. In the second letter, Wickenkamp again stated that she would not communicate with B & J's outside counsel. Wickenkamp had another letter hand delivered to Smith on July 21. This letter warned that Wickenkamp would file an amended complaint in federal court raising additional claims against B & J unless B & J paid the balance of the contract price by the close of business on July 22. The July 21 letter also threatened to subpoena various B & J representatives for depositions in a state condemnation case then pending regarding a parcel of real estate adjacent to the real estate in dispute in the federal case. According to the formal charges, *496 the state case was referred to as "City of Lincoln v. Trackwell, CI-04-3289."
On July 26, 2005, Wickenkamp had the threatened subpoenas and a subpoena under what is now codified as Neb. Ct. R. Disc. § 6-330(b)(6) for corporate response served on the B & J principals and B & J's in-house counsel. As warned in the July 21 letter, the subpoenas were not issued out of the federal case, but, rather, were issued out of the separate state court condemnation case. The only issue before the court in the state case was the market value of the condemned parcel of land and the amount of any severance or consequential damages. The § 6-330(b)(6) subpoena sought discovery unrelated to the issues before the state court, including, inter alia, information relating to a disciplinary complaint filed by Wickenkamp against B & J's outside counsel, communications between B & J and a title company, development plans of B & J, communications between B & J and lending institutions, and communications with contractors regarding development of the property.
On July 28, 2005, Wickenkamp filed the first amended complaint in the federal court case, raising additional claims against B & J. On July 29, Wickenkamp filed a second amended complaint adding additional defendants to the federal lawsuit. On August 1, Wickenkamp sent B & J's in-house counsel another demand letter stating that unless B & J paid the Trackwells the contract price plus compensatory damages by noon on August 4, Wickenkamp would file a third amended complaint adding claims under the federal Racketeer Influenced and Corrupt Organizations Act. Apparently after receiving the August 1 letter, B & J and its principals retained a new law firm.
After Wickenkamp filed a third amended complaint, counsel for the defendants moved to disqualify Wickenkamp as counsel of record for the Trackwells, arguing that she would be a witness in the trial of the matter and for sanctions against Wickenkamp for her abusive and bad faith conduct in the prosecution of the Trackwells' claims and in related litigation. Prior to the court's ruling on the motion to disqualify, Wickenkamp withdrew as counsel. The federal magistrate judge ultimately found that Wickenkamp's behavior was abusive and unnecessarily escalated a simple breach of contract case into a case alleging illegal if not criminal conduct by B & J and sanctioned Wickenkamp personally in the amount of $33,631. The federal district court judge affirmed the order.
Relator alleged that the acts of Wickenkamp in her representation of the Trackwells violated § 7-104, Wickenkamp's oath of office as an attorney licensed to practice law in the State of Nebraska, and the following provisions of the Nebraska Code of Professional Responsibility (for conduct that occurred prior to September 1, 2005): DR 1-102 (misconduct); Canon 5, DR 5-101 (refusing employment when interests of lawyer may impair lawyer's independent professional judgment) and DR 5-102 (withdrawal as counsel when lawyer becomes witness); and Canon 7, DR 7-102 (representing client within bounds of law); and DR 7-103 (communicating with one of adverse interest). Relator further alleged that the acts of Wickenkamp violated the following provisions of the Nebraska Rules of Professional Conduct (for conduct that occurred after September 1, 2005), as now codified: Neb. Ct. R. Prof. Cond. § 3-503.2 (expediting litigation), § 3-503.7 (lawyer as witness), § 3-504.2 (communication with person represented by counsel), and § 3-508.4 (misconduct).
In count two of the formal charges, relator stated that in June 2005, Tiffany Lacy hired Wickenkamp to represent Lacy in recovering for injuries she incurred while *497 working for a roofing contractor. Wickenkamp and Lacy never memorialized in writing the terms of the fee agreement, but there seems to be an agreement that Wickenkamp was to receive one-third of any recovery. It is not clear, however, as to what figure one-third would apply. Lacy had been injured in 2003, and by the time she retained Wickenkamp, there were issues regarding the statute of limitations on her claims. Wickenkamp eventually settled with Lacy's employer on the following terms: receipt of a cash payment of $5,000, the employer's agreement to pay for all future medical services required by Lacy as a result of the injury, and the employer's agreement to waive a construction lien that the employer had against Lacy's grandmother's house. Lacy claims that it was her understanding that Wickenkamp would receive one-third of the $5,000 cash payment. However, Wickenkamp claimed a fee of one-third of $15,000, the estimated value of the medical services, plus an additional amount for other work Wickenkamp had performed for Lacy. The fee totaled $6,400; Wickenkamp reduced her fee to $4,000 and distributed the balance of the funds, $1,000, to Lacy. At the time Wickenkamp distributed the funds, she knew Lacy disagreed with the proposed fee.
Relator alleged that this act violated § 7-104, Wickenkamp's oath of office as an attorney licensed to practice law in the State of Nebraska, and violated the following provisions of the Code of Professional Responsibility (for conduct that occurred prior to September 1, 2005): DR 1-102 (misconduct) and Canon 9, DR 9-102 (preserving identity of funds and property of client). Further, relator alleged that Wickenkamp's conduct occurring after September 1, 2005, violated Neb. Ct. R. Prof. Cond. § 3-501.15 (safekeeping property), as now codified.
Finally, count three of the formal charges alleged that sometime during 2003, Wickenkamp was retained by Scott Cash, or his mother, to assist him on various postconviction claims. In July 2004, Cash sought to have a rehearing before the Nebraska Court of Appeals. Under a deadline for filing the pleading seeking review, Wickenkamp signed Cash's name to a purported pro se filing and filed it with the court. Wickenkamp claims that Cash gave her permission to sign his name. Cash disputes this assertion. Nowhere in the pleading did Wickenkamp acknowledge that she was signing on behalf of Cash.
Relator alleged that this act constituted a violation of § 7-104, Wickenkamp's oath of office as an attorney licensed to practice law in the State of Nebraska, and violated the following provisions of the Code of Professional Responsibility: DR 1-102 (misconduct) and DR 7-102 (representing client within bounds of law).

ANALYSIS
[1-4] A proceeding to discipline an attorney is a trial de novo on the record. State ex rel. Counsel for Dis. v. Smith, 275 Neb. 230, 745 N.W.2d 891 (2008). An attorney against whom formal charges have been filed is subject to a judgment on the pleadings if he or she fails to answer those charges. Id. The disciplinary rules provide that if no answer is filed, the court may dispose of the matter on a motion for judgment on the pleadings as long as an opportunity for oral argument is given before disbarment is ordered. State ex rel. Counsel for Dis. v. Jones, 270 Neb. 471, 704 N.W.2d 216 (2005).
[5] We have stated that "[t]he basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances." *498 State ex rel. Counsel for Dis. v. Swanson, 267 Neb. 540, 551, 675 N.W.2d 674, 682 (2004). In the instant case, on May 7, 2008, this court granted relator's motion for judgment on the pleadings as to the facts; therefore, the only issue before us is the type of discipline to be imposed.
Neb. Ct. R. § 3-304 provides that the following may be considered as discipline for attorney misconduct:
(A) Misconduct shall be grounds for:
(1) Disbarment by the Court; or
(2) Suspension by the Court; or
(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or
(4) Censure and reprimand by the Court; or
(5) Temporary suspension by the Court; or
(6) Private reprimand by the Committee on Inquiry or Disciplinary Review Board.
(B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.
See, also, Neb. Ct. R. § 3-310(N).
[6, 7] With respect to the imposition of attorney discipline in an individual case, we evaluate each attorney discipline case in light of its particular facts and circumstances. See State ex rel. Counsel for Dis. v. Riskowski, 272 Neb. 781, 724 N.W.2d 813 (2006). For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. State ex rel. Counsel for Dis. v. Dortch, 273 Neb. 667, 731 N.W.2d 594 (2007).
[8, 9] To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. Id. We have also noted that the determination of an appropriate penalty to be imposed on an attorney requires consideration of any aggravating or mitigating factors. State ex rel. Special Counsel for Dis. v. Fellman, 267 Neb. 838, 678 N.W.2d 491 (2004). We have considered prior reprimands as aggravators. State ex rel. Counsel for Dis. v. Jones, 270 Neb. 471, 704 N.W.2d 216 (2005).
Relator suggests that the appropriate sanction in this case is disbarment. In considering the appropriate sanction, we note that the evidence in the present case establishes among other facts that Wickenkamp: (1) improperly escalated a simple contract case into a case involving illegal and possibly criminal behavior, (2) contacted opposing parties who were represented by counsel, (3) distributed a portion of her client's funds to herself as fees when she knew her client disagreed with the proposed fee, and (4) forged her client's signature to a purported pro se filing. Further, we are aware of and must consider as aggravators Wickenkamp's two prior private reprimands and the suspension of her license for 1 year, based on separate formal charges involving Wickenkamp's neglect of client matters. See Wickenkamp I.
[10] In Wickenkamp I, we noted that this court was seriously concerned with Wickenkamp's repeated neglect of matters entrusted to her. We further noted that cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions. Id. Indeed, we have said that ordinarily, cumulative acts of misconduct can, and often do, lead to disbarment. State ex *499 rel. Counsel for Dis. v. Sutton, 269 Neb. 640, 694 N.W.2d 647 (2005). The facts alleged in the formal charges, which stand as established in this case, demonstrate Wickenkamp's continued pattern of improperly handling the cases entrusted to her and support the imposition of relator's suggested discipline of disbarment.
[11] In our consideration of the appropriate discipline, we are also concerned by Wickenkamp's failure to respond to the formal charges filed by relator. We consider an attorney's failure to respond to inquiries and requests for information from relator as an important matter and as a threat to the credibility of attorney disciplinary proceedings. See State ex rel. NSBA v. Rothery, 260 Neb. 762, 619 N.W.2d 590 (2000). The failure to respond to formal charges in this court is of even greater moment.
Upon due consideration of the facts of this case, based on Wickenkamp's cumulative acts of misconduct and her disrespect for this court's disciplinary jurisdiction, the court finds that the proper sanction is disbarment.

CONCLUSION
The motion for judgment on the pleadings is granted. It is the judgment of this court that Wickenkamp should be and is hereby disbarred from the practice of law, effective immediately. Wickenkamp is directed to pay costs and expenses in accordance with Neb.Rev.Stat. §§ 7-114 and 7-115 (Reissue 2007) and § 3-310(P) and Neb. Ct. R. § 3-323(B) within 60 days after an order imposing costs and expenses, if any, is entered by the court.
JUDGMENT OF DISBARMENT.
WRIGHT, J., participating on briefs.