765 N.W.2d 482 (2009)
277 Neb. 787
STATE of Nebraska ex rel. COUNSEL FOR DISCIPLINE OF the NEBRASKA SUPREME COURT, Relator,
v.
David S. WINTROUB, Respondent.
Nos. S-05-1518, S-07-942.
Supreme Court of Nebraska.
May 22, 2009.
*485 John W. Steele, Assistant Counsel for Discipline, for relator.
Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., Lincoln, for respondent in No. S-05-1518.
Melvin C. Hansen and Brian C. Hansen, of Nolan, Olson, Hansen, Lautenbaugh & Buckley, L.L.P., Omaha, for respondent in No. S-07-942.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.

I. INTRODUCTION
These two attorney disciplinary actions involve separate formal charges filed by the Counsel for Discipline of the Nebraska Supreme Court against David S. Wintroub, who was admitted to the practice of law in the State of Nebraska on September 28, 1995. Case No. S-05-1518 stems from Wintroub's involvement in illegally structuring transactions to avoid federal bank reporting laws. After a felony conviction for this conduct, Wintroub was temporarily suspended from the practice of law in the State of Nebraska. The suspension became effective on January 19, 2006. Case No. S-07-942 involves eight additional formal charges that were filed against Wintroub on September 6, 2007. These charges relate to his representation of various clients both before and after his suspension. In both cases, the court-appointed referee found that Wintroub had violated disciplinary rules, and Wintroub takes exception to the referee's findings and recommended sanctions. We impose discipline as indicated below.

II. FACTS

1. CASE No. S-05-1518
In 2000, Wintroub agreed to sell to Gary Storey, Wintroub's neighbor, a 50-percent interest in an Internet business Wintroub was developing. The agreement called for Storey to invest $40,000 upon the execution of the written contract, $50,000 for operating expenses by August 25, 2000, and $30,000 for operating expenses by September 22, if deemed necessary.
Storey told Wintroub that he owned used car dealerships and that many of his customers paid him in cash and asked if he could make some payments in cash. Wintroub agreed. Apparently, Storey made all his payments to Wintroub in cash, and he made them all in increments of less than $10,000. Wintroub received approximately $67,000 from Storey through seven cash deposits. At one point, in a period of just 7 days, Wintroub made four deposits of $9,000 each. When making these deposits, Storey would meet Wintroub at the bank, and Wintroub would deposit the cash into his business account and create a receipt for purposes of filing his corporate tax returns.
On October 4, 2005, pursuant to a plea agreement, Wintroub was convicted in the U.S. District Court for the District of Nebraska of structuring transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324 (2000). Section 5324(a)(3) provides that no person shall structure or assist in structuring any transaction for the purpose of evading the reporting requirements of 31 U.S.C. § 5313 (2000). Section 5313(a), in conjunction with 31 C.F.R. § 103.22 (2005), requires banks to *486 file currency transaction reports for any cash transaction exceeding $10,000.
Before accepting the plea, the U.S. District Court reviewed the factual basis for the charges. The parties agreed that 31 U.S.C. § 5324 did not require knowledge that structuring transactions was an illegal activity. However, they understood that it was necessary to show that Wintroub knew the law required banking institutions to report transactions over $10,000 and that he knowingly assisted in structuring the transactions with the purpose of avoiding the 31 U.S.C. § 5313 reporting requirement.
Wintroub admitted he knew at the time of the deposits that banks were required to report all cash transactions in excess of $10,000. He further admitted that it occurred to him that "Storey's decision to give me only cash amounts of less than $10,000 for deposit, may have been because he did not want the transaction to be subject to any report." As Wintroub's counsel stated to the court, "[I]t doesn't stretch the imagination for someone who knows that there is a $10,000 reporting requirement, that if you continually deposit $9,000 at a time, that there's some correlation between the amount given and the reporting requirement." Nevertheless, counsel explained that Wintroub "didn't think it mattered to him whether... Storey was trying to avoid reporting requirements." Wintroub stated:
I had no reason to be concerned about the transaction, and from my point of view, I did not know or understand that there was any prohibition on "structuring" financial transactions to avoid the reporting requirements, or that my making of those deposits was prohibited in any manner, as I was not the one who structured the manner in which the payments were made to me.
The court accepted Wintroub's plea, concluding that at the very least, Wintroub knowingly assisted in structuring a single transaction of $27,000 when he deposited that amount over the course of 3 consecutive days in cash deposits of $9,000 each. Wintroub was sentenced to 5 years' probation with 5 months of home confinement. Wintroub did not appeal his federal conviction.
After the conviction, Counsel for Discipline filed formal charges alleging that Wintroub had violated his oath of office as an attorney and the following provisions of the Code of Professional Responsibility: Canon 1, DR 1-102(A)(1) (violating disciplinary rule); DR 1-102(A)(3) (engaging in illegal conduct involving moral turpitude); and DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). A referee was appointed, and a hearing was held. At the disciplinary hearing, Wintroub generally accepted the factual basis for his felony conviction. He reiterated, however, that he had believed he had no duty to report his suspicion that Storey was structuring the payments so as to avoid reporting.
Wintroub testified that he did not formally investigate the legality of his actions, but instead simply "thought it through myself." Wintroub expressed his deep remorse and his regret for not having investigated the legality of his actions more thoroughly.
The referee found that Wintroub had violated DR 1-102(A)(1), (3), and (4). The referee noted that Wintroub had expressed genuine remorse and did not know he was directly violating any law. Nevertheless, the referee found that Wintroub had committed a serious crime and had failed to conduct even the simplest investigation into the legality of his conduct, because he wished to receive the benefit of the payments. The referee recommended *487 that Wintroub be suspended from the practice of law for 2 years.

2. CASE No. S-07-942
Counsel for Discipline subsequently filed additional formal charges against Wintroub. These formal charges are before us as case No. S-07-942 and relate to Wintroub's representation of clients both before and after his suspension. For the sake of clarity, we describe the charges upon which the referee found disciplinary violations as they relate to individual clients.

(a) Andrea Franey
In February 2005, Andrea Franey retained Wintroub to represent her in a divorce action in Douglas County, Nebraska. Wintroub tried the case in September 2005, and on October 13, the judge issued a letter decision and directed Wintroub to prepare the decree. Wintroub never submitted a decree to the judge, and in February 2006, Franey hired new counsel to finally prepare the decree.
The formal charges alleged that Wintroub's conduct violated his oath of office as an attorney. The charges also alleged that his conduct violated Neb. Ct. R. of Prof. Cond. §§ 3-501.3 and 3-501.4. Section 3-501.3 requires a lawyer to act with diligence, and § 3-501.4 requires a lawyer to promptly communicate with a client.
In the referee's final report, he noted Wintroub's testimony that after receiving the letter decision from the judge, Wintroub prepared a decree and sent it to opposing counsel for approval. The referee noted, however, that Wintroub failed to offer into evidence a copy of any decree that he had prepared for Franey. The referee found that Franey's new attorney was able to contact opposing counsel, who approved the decree that the new attorney prepared. The referee concluded that Wintroub's failure "to follow through in getting the Decree entered" violated §§ 3-501.3 and 3-501.4.

(b) Scott Thompson
On June 20, 2005, Scott Thompson retained Wintroub to represent him in a driving under the influence action. Approximately 2 weeks later, Thompson terminated Wintroub's representation. A written fee agreement signed by Thompson provided that he would pay Wintroub a $1,500 "non-refundable flat fee," and Thompson had paid Wintroub that amount. After he terminated Wintroub's representation, Thompson requested a partial refund, and Wintroub stated he would look at the amount of time he spent on the matter. No amount of the fee was refunded to Thompson.
The formal charges alleged that Wintroub's acts violated his oath of office as an attorney and Neb. Ct. R. of Prof. Cond. § 3-501.16(d), which provides that upon termination of representation, a lawyer shall refund "any advance payment of fee or expense that has not been earned or incurred." Because Wintroub's acts occurred prior to September 1, 2005, however, the applicable disciplinary rule is actually Canon 2, DR 2-110(A)(3),[1] which provided that "[a] lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned." The two rules are substantially similar.
The referee noted Wintroub testified that he met with Thompson twice, prepared for an administrative license revocation hearing, and prepared a motion. However, Wintroub's representation was terminated prior to the hearing, and Wintroub did not offer a copy of the motion he allegedly prepared as evidence. The referee *488 found that Wintroub violated the disciplinary rule when he did not complete the representation of Thompson and did not refund any portion of the advance fee payment. In arriving at this conclusion, the referee found that Wintroub clearly received fees for work he did not do for Thompson.

(c) Robert Ginter
Robert Ginter retained Wintroub on February 24, 2004. A written fee agreement signed by Ginter provided for a "non-refundable fee in the amount of $4,000.00" and for an additional one-third contingency fee of any amounts recovered in a lawsuit. Wintroub filed a complaint on behalf of Ginter in the U.S. District Court on April 5, 2005. Ginter terminated Wintroub's representation on June 3 and requested a refund of the unearned portion of the fee. No refund has been made.
The formal charges alleged that Wintroub's conduct violated his oath of office as an attorney and Neb. Ct. R. of Prof. Cond. § 3-501.1 (competence) and §§ 3-501.3 (diligence) and 3-501.16 (declining or terminating representation). We note that because Wintroub's conduct occurred prior to September 1, 2005, the charges should have been based on the Code of Professional Responsibility.[2] It appears that the referee may have recognized this, as he concluded that due to the conflicting evidence in the record, the only disciplinary violation proved by clear and convincing evidence was Wintroub's neglect of a legal matter for failing to timely file the complaint. The referee cited the correct provision, Canon 6, DR 6-101(A)(3), which prohibits a lawyer from "[n]eglect[ing] a legal matter entrusted to him or her."

(d) Shari Kearney
Wintroub represented Shari Kearney in a lawsuit against her employer. Kearney sent Wintroub a check for $1,500 on February 6, 2006. The referee found that this was after Wintroub was aware of his suspension from the practice of law in Nebraska, which was effective January 19, 2006. After Wintroub was suspended, his father, who is also an attorney, continued to represent Kearney, but ultimately, Wintroub's father advised her to find other counsel to continue her lawsuit. Kearney sought, but did not receive, a refund of a portion of the $1,500 she paid to Wintroub.
The formal charges alleged that Wintroub violated his oath of office as an attorney, §§ 3-501.3 (diligence), 3-501.4 (communications), and 3-501.16 (declining or terminating representation), and Neb. Ct. R. of Prof. Cond. § 3-508.4 (misconduct). The charges also alleged that Wintroub violated Neb. Ct. R. of Prof. Cond. §§ 3-505.5 by engaging in the unauthorized practice of law in another jurisdiction and 3-507.3 by soliciting a prospective client.
The referee was "particularly troubled" that Wintroub accepted fees from Kearney after "he clearly was aware he had been suspended from the practice of law." He found that no refund was paid to Kearney, even though Wintroub failed to complete her case, and noted that Wintroub's father testified that he thought Kearney should be given a refund. The referee found that it was clear that Wintroub received fees from Kearney for work he did not perform and concluded that Wintroub's conduct violated §§ 3-501.3 (diligence), 3-501.4 (communications), and 3-501.16 (declining or terminating representation).

(e) Trent Jindra
After his suspension, Wintroub operated Wintroub Consulting Services. On August 16, 2006, Wintroub was retained by Trent Jindra to assist in the collection of a past-due *489 business debt. Wintroub sent a collection letter on behalf of Jindra. At the time, Wintroub was not licensed as a collection agent.
The formal charges alleged that Wintroub's conduct violated his oath of office as an attorney and § 3-508.4 (misconduct). The referee found that Wintroub acted as a collection agent for Jindra after he had been suspended. The referee found Wintroub's testimony about being unaware that he was required to be licensed in order to act as a collection agent "not credible." He found Wintroub's assertions that he had consulted a law professor and a lawyer about the need to be licensed and told there was no such requirement to be "very troublesome" and "totally unworthy of credibility." The referee concluded that Wintroub's conduct violated § 3-508.4.

(f) Other Charges and Findings
The formal charges also alleged that Wintroub violated disciplinary rules in his representation of another client and did not timely respond to the Counsel for Discipline. The referee found there was insufficient evidence to support these allegations. In his final decision, the referee referenced a prior disciplinary action against Wintroub that had been dismissed and the pending action in case No. S-05-1518. The referee also specifically noted Wintroub's failure to provide documentary evidence to support his testimony. The referee ultimately recommended that Wintroub be suspended from the practice of law for a period of 3 years.

III. EXCEPTIONS

1. CASE NO. S-05-1518
In case No. S-05-1518, Counsel for Discipline asserts that the 2-year suspension recommended by the referee is too lenient. Wintroub, on the other hand, asserts that he did not violate the Code of Professional Responsibility, because the conduct underlying his felony conviction does not implicate his honesty, trustworthiness, or fitness to practice law. He also argues that a 2-year suspension is excessive.

2. CASE No. S-07-942
Counsel for Discipline filed no exceptions in case No. S-07-942. Wintroub filed 11, and asserts, restated, that the referee erred in (1) finding he failed to get the divorce decree finalized for Franey, (2) finding he did not adequately represent Thompson and did not refund an unearned portion of an advance fee payment, (3) finding he failed to file a complaint for Ginter for over a year after he had been retained, (4) finding he violated disciplinary rules with regard to his representation of Kearney, (5) finding he accepted fees from Kearney after he was aware that he had been suspended from the practice of law, (6) finding he attempted to collect a debt for Jindra when not licensed to do so, (7) finding he failed to refund fees for work which he did not do to Thompson and Kearney, (8) finding his testimony about the need to have a license to collect debts not to be credible, (9) relying on previous disciplinary cases involving Wintroub that had been dismissed or that were pending, (10) considering that Wintroub presented no evidence to corroborate his testimony on the work he did for former clients, and (11) recommending a sanction that was unduly severe given the facts and circumstances of the case.

IV. STANDARD OF REVIEW
[1,2] A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings *490 of the referee.[3] When credible evidence is in conflict on material issues of fact, however, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.[4]

V. ANALYSIS

1. VIOLATIONS
[3] In our de novo review, we first consider what violations occurred. In order to sustain a charge in a lawyer discipline proceeding, we must find the charge to be established by clear and convincing evidence.[5] We limit our review to the disciplinary violations found by the referee and to which Wintroub has taken exception.
Because the conduct in case No. S-05-1518 occurred prior to the September 1, 2005, effective date of the Nebraska Rules of Professional Conduct, the charges in that case are governed by the now-superseded Code of Professional Responsibility.[6] The conduct leading to the charges in case No. S-07-942 occurred both before and after September 1, 2005. Thus, although Counsel for Discipline charged Wintroub under the Nebraska Rules of Professional Conduct, we will apply the superseded Code of Professional Responsibility to those acts occurring prior to the effective date of the Rules of Professional Conduct.[7]

(a) Case No. S-05-1518
[4] The facts leading up to Wintroub's felony conviction and the subsequent disciplinary proceedings in case No. S-05-1518 are largely undisputed. Wintroub claims, however, that his actions did not violate any disciplinary rule. In particular, Wintroub emphasizes that he did not know it was illegal to assist in structuring transactions, and he argues that the actions that led to his conviction were not inherently immoral, characterizing his criminal acts as "`technical.'"[8] Wintroub points out that under DR 1-102(A)(3), not all illegal conduct is subject to discipline, but only illegal conduct "involving moral turpitude." Wintroub asserts his conduct did not involve moral turpitude and did not involve "dishonesty, fraud, deceit, or misrepresentation," as was required under DR 1-102(A)(4). We disagree.
While the original enactment of 31 U.S.C. § 5324 required that the defendant act with knowledge that structuring was unlawful,[9] most courts hold that § 5324, as amended,[10] now requires only that the following elements be met in order to sustain a conviction: (1) the defendant in fact engaged in acts of structuring, (2) he or she did so with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000, and (3) he or she acted with intent to evade that reporting requirement.[11] *491 The record in this case demonstrates that the U.S. District Court convicted Wintroub with this understanding of the elements of the offense.
Contrary to Wintroub's characterization, § 5324 is not a strict liability or merely a "technical" crime. Section 5324 requires the mens rea of knowing of the bank reporting requirements and knowingly circumventing those requirements. Thus, Wintroub's conviction establishes that he knowingly hid his cash transaction with Storey from the government, knowing the government wished to be informed of the transaction.
It is true that "currency structuring is not inevitably nefarious,"[12] but we conclude that knowingly assisting in a scheme to evade government-mandated reporting requirements, without even inquiring into the reasons for such subterfuge, is contrary to concepts of honesty and good morals, and thus involves moral turpitude.[13]
[5] We reject any argument by Wintroub that simply because he was unaware that his actions were subject to criminal penalties, those actions cannot constitute a crime of moral turpitude. Since 1986, it has been a crime to structure a financial transaction to evade the reporting law.[14] We have repeatedly recognized the maxim that ignorance of the law is not an excuse.[15] This maxim applies with even greater emphasis to an attorney who is expected to be learned in the law.[16] Generally, a judgment of conviction of a felony or misdemeanor involving moral turpitude, whether or not by plea agreement, is conclusive upon the lawyer in a disciplinary proceeding and is sufficient to authorize the court to impose discipline.[17] We find there is clear and convincing evidence that Wintroub violated DR 1-102(A)(3).
We also find there is clear and convincing evidence that Wintroub violated DR 1-102(A)(4), which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Assisting in the deliberate concealment of a transaction over $10,000 is deceitful. Because Wintroub violated DR 1-102(A)(3) and (4), we likewise find that Wintroub violated DR 1-102(A)(1) (violating disciplinary rule).
[6,7] Although Wintroub points out that he was not acting as a lawyer when he committed the acts leading to the violations, we have said that offenses committed by an attorney in his capacity as a private individual and not in any professional capacity will nevertheless justify disciplinary proceedings if the misconduct is indicative of moral unfitness for the profession.[18] We conclude that Wintroub's *492 actions leading to his felony conviction, which stemmed from deliberately turning a blind eye to the law, are indicative of moral unfitness for the profession. Thus, Wintroub is properly subject to discipline. Before determining what that discipline should be, we address the additional violations found by the referee in case No. S-07-942.

(b) Case No. S-07-942

(i) Franey
The referee found clear and convincing evidence that Wintroub failed to act diligently in representing Franey and failed to communicate with her. Wintroub argues that the referee's findings are not supported by clear and convincing evidence.
[8,9] We agree that there is no clear and convincing evidence that Wintroub failed to communicate with Franey, as the record contains very little evidence about his communications with her. We find, however, that there is clear and convincing evidence that Wintroub failed to act with due diligence in procuring the final divorce decree. Wintroub contends the evidence is undisputed, based on his testimony, that he did submit a decree to opposing counsel after receiving the letter decision from the judge but did not receive a response. However, it is clear from the referee's findings that he found Wintroub's testimony on this issue lacked credibility. It is equally clear that no final decree was procured until Franey hired separate counsel. Based on the record before us, we conclude that Wintroub failed to act with due diligence because he failed to procure the final divorce decree for Franey, thus violating § 3-501.3 of the Nebraska Rules of Professional Conduct.

(ii) Thompson
The referee made a specific finding that Wintroub received fees for work he did not do for Thompson and that this receipt of unearned fees and failure to complete Thompson's representation violated § 3-501.16(d). Again, we note that the applicable disciplinary provision is actually DR 2-110(A)(3), which is substantially similar to § 3-501.16(d).
[10] The evidence in the record is that Thompson terminated Wintroub's representation before Wintroub could complete the representation, and thus, the referee's finding that Wintroub committed a disciplinary violation by failing to complete Thompson's representation is not supported by clear and convincing evidence. The record does, however, support the referee's finding that Wintroub received fees for work he did not perform for Thompson. Although Wintroub testified that he performed extensive services for Thompson, the referee implicitly found this testimony to lack credibility. Wintroub was employed by Thompson for only approximately 2 weeks, and there is no documentary evidence of any services performed for Thompson. We defer to the referee's judgment of Wintroub's credibility and conclude that there is clear and convincing evidence that Wintroub did not earn the entire $1,500 fee he received from Thompson.
[11] Wintroub contends that the fee agreement Thompson signed clearly provided for a nonrefundable fee and that because such an agreement does not violate any disciplinary rules, he is not subject to discipline, even if he did not earn the entire fee he received from Thompson. We disagree. Pursuant to DR 2-110(A)(3), a lawyer must "refund promptly any part of a fee paid in advance that has *493 not been earned." When interpreting similar ethical and disciplinary rules, other courts have concluded that a lawyer may not retain an unearned fee, even if the fee agreement clearly provides that the fee is nonrefundable.[19] In doing so, some courts have concluded that nonrefundable fee agreements are invalid per se.[20] Most courts find that nonrefundable fee agreements are not invalid per se, but nevertheless refuse to enforce the "nonrefundable" aspect of the agreement on a case-by-case basis if the amount of the agreed-upon fee is not actually earned by the attorney.[21]
In the instant case, we need not resolve whether a non-refundable fee agreement is unenforceable per se, because the fee agreement before us is unenforceable under either rule. We note that this is not a case involving a "general" retainer paid in order to secure a lawyer's availability,[22] and we offer no opinion on the enforceability of a nonrefundable fee agreement in that context. We conclude there was clear and convincing evidence that Wintroub violated DR 2-110(A)(3) when he retained fees paid by Thompson that he did not earn.

(iii) Ginter
[12] The referee found that Wintroub committed neglect by failing to file the Ginter complaint in a timely manner. Wintroub contends that this violation was not supported by clear and convincing evidence. He contends that the Ginter complaint involved a wrongful termination lawsuit in federal court "which all lawyers know is a substantial undertaking."[23] We conclude that there is not clear and convincing evidence to support this violation. There is conflicting evidence in the record as to what services Wintroub performed for Ginter, and we are unable to say from the record that a 1-year delay in filing what appears to be a complicated legal action constitutes neglect.

(iv) Kearney
The referee found that Wintroub's conduct with respect to his representation of Kearney violated §§ 3-501.3 (diligence), 3-501.4 (communications), and 3-501.16 (declining or terminating representation). The referee made a factual finding that Wintroub accepted fees from Kearney "after he clearly was aware he had been suspended from the practice of law." Implicit in this factual finding is the referee's rejection of Wintroub's contention that the $1,500 paid by Kearney was for work he performed for her prior to February 2006.
[13,14] We conclude that there is no clear and convincing evidence that Wintroub either failed to communicate with *494 Kearney or failed to diligently work on her case, as the record is almost entirely silent on these issues. We conclude, however, that there is clear and convincing evidence that Wintroub received fees from Kearney in February 2006, after he had been suspended, and retained fees that he did not earn. The record thus supports the finding that he violated § 3-501.16.

(v) Jindra
[15] The referee concluded that Wintroub violated § 3-508.4 by acting as a collection agent without a license after his law license was suspended. Wintroub contends that he may have made a mistake in not being licensed as a debt collector and in relying on legal advice that he need not be licensed, but that there was no intentional wrongdoing, and that thus, the evidence is not clear and convincing to support this allegation. The referee found that Wintroub's testimony on this issue was not credible, and we conclude that clear and convincing evidence supports the referee's finding that Wintroub violated § 3-508.4.

(vi) Other Findings
[16] Wintroub argues that the referee improperly referenced both a prior disciplinary case against him that was ultimately dismissed and the pending action in case No. S-05-1518 when recommending the sanction to be imposed in case No. S-07-942. Although the referee noted these actions in his report, it is clear that they were not the sole basis for the recommended sanction. Further, imposition of the ultimate sanction on Wintroub is a function of this court in this proceeding, and thus, any error committed by the referee is inconsequential.
Wintroub also argues that the referee improperly shifted the burden of proof to him by requiring him to present documentary evidence in support of his testimony. We construe the referee's comments on the lack of documentary evidence in the record to relate solely to his finding that Wintroub's testimony lacked credibility and do not view this as an improper shifting of the burden of proof. These exceptions are without merit.

2. SANCTIONS
[17-19] We turn now to the appropriate discipline for the violations that have been established by clear and convincing evidence in these two cases. To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.[24] The determination of an appropriate penalty to be imposed on an attorney in a disciplinary proceeding requires the consideration of any aggravating or mitigating factors.[25] Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances.[26]
[20,21] Between these two cases, we have found clear and convincing evidence that Wintroub has violated at least seven different disciplinary rules. Cumulative acts of attorney misconduct are distinguishable *495 from isolated incidents, therefore justifying more serious sanctions.[27] The records in these two cases reflect a pattern of misconduct involving not only neglect, but also deceit for personal gain.
Wintroub's felony conviction for assisting in hiding a large cash transaction from the federal government is far from merely "technical." It was dishonest. Moreover, as an attorney, Wintroub has an obligation to uphold the laws of the United States.[28] Wintroub never made any inquiry into the legality of his actions, despite the fact that he was aware he was circumventing federal reporting procedures. Neither did Wintroub investigate whether he might be assisting in the laundering of illegal drug money, despite his admission that he found it suspicious that Storey gave him cash only in amounts less than $10,000. His failure to question his actions resulted in a grievous breach of professional ethics. His conviction violates basic notions of honesty and endangers public confidence in the legal profession.
Wintroub's failure to investigate the legality of his actions as a debt collector illustrates his continued indifference to the rule of law. The record also reveals a consistent pattern of ethical violations related to Wintroub's representation of clients. Wintroub failed to complete Franey's representation, and we, like the referee, are particularly troubled that he retained fees he did not earn from Thompson and Kearney, and even accepted fees from Kearney after he was aware he had been suspended from the practice of law in this state.
Wintroub testified that he sincerely regretted not inquiring into the legality of structuring cash transactions, but his consistent and cumulative violations of our disciplinary rules reflects a general failure to fully comprehend the nature of his conduct. Considering the need to protect the public, the need to deter others, the reputation of the bar as a whole, Wintroub's fitness to practice law, and the aggravating and mitigating circumstances, we conclude that Wintroub should be disbarred from the practice of law.

VI. CONCLUSION
There is clear and convincing evidence in case No. S-05-1518 that Wintroub violated DR 1-102(A)(1), (3), and (4) of the Code of Professional Responsibility. Likewise, in case No. S-07-942, there is clear and convincing evidence that he violated DR 2-110(A)(3) and §§ 3-501.3, 3-501.16, and 3-508.4 of the Nebraska Rules of Professional Conduct. It is therefore the judgment of this court that Wintroub is disbarred from the practice of law in the State of Nebraska, effective immediately. Wintroub is directed to comply with Neb. Ct. R. § 3-316, and upon failure to do so, he shall be subject to punishment for contempt of this court. Wintroub is further directed to pay costs and expenses in accordance with Neb.Rev.Stat. §§ 7-114 and 7-115 (Reissue 2007) and Neb. Ct. R. §§ 3-310(P) and 3-323 within 60 days after an order imposing costs and expenses, if any, is entered by this court.
JUDGMENT OF DISBARMENT.
MILLER-LERMAN, J., participating on briefs in No. S-07-942.
HEAVICAN, C.J., not participating.
NOTES
[1] See State ex rel. Counsel for Dis. v. Switzer, 275 Neb. 881, 750 N.W.2d 681 (2008).
[2] See id.
[3] State ex rel. Counsel for Dis. v. Riskowski, 272 Neb. 781, 724 N.W.2d 813 (2006).
[4] See State ex rel. Counsel for Dis. v. Scott, 275 Neb. 194, 745 N.W.2d 585 (2008).
[5] See State ex rel. Counsel for Dis. v. Herzog, 277 Neb. 436, 762 N.W.2d 608 (2009).
[6] See State ex rel. Counsel for Dis. v. Switzer, supra note 1.
[7] Id.
[8] Brief for respondent in case No. S-05-1518 at 16.
[9] See Ratzlaf v. United States, 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).
[10] Money Laundering Suppression Act of 1994, Pub.L. No. 103-325, § 411(a) and (c)(1), 108 Stat. 2160, 2253 (codified at 31 U.S.C. §§ 5322(a) and (b) and 5324 (2000)).
[11] See, U.S. v. MacPherson, 424 F.3d 183 (2d Cir.2005); U.S. v. Pang, 362 F.3d 1187 (9th Cir.2004); U.S. v. Gabel, 85 F.3d 1217 (7th Cir.1996). But see U.S. v. Noske, 117 F.3d 1053 (8th Cir.1997).
[12] Ratzlaf v. United States, supra note 9, 510 U.S. at 144, 114 S.Ct. 655.
[13] State ex rel. NSBA v. Mahlin, 252 Neb. 985, 568 N.W.2d 214 (1997); State ex rel. NSBA v. Caskey, 251 Neb. 882, 560 N.W.2d 414 (1997).
[14] 31 U.S.C. § 5324 (Supp. V 1987).
[15] See State ex rel. Nebraska State Bar Assn. v. Hollstein, 202 Neb. 40, 274 N.W.2d 508 (1979).
[16] Id.
[17] See, State ex rel. NSBA v. Brown, 251 Neb. 815, 560 N.W.2d 123 (1997); State ex rel. Nebraska State Bar Assn. v. Leonard, 212 Neb. 379, 322 N.W.2d 794 (1982).
[18] See, State ex rel. Counsel for Dis. v. Hughes, 268 Neb. 668, 686 N.W.2d 588 (2004); State ex rel. NSBA v. Brown, supra note 17; State ex rel. NSBA v. Leonard, supra note 17; State ex rel. NSBA v. Fitzgerald, 165 Neb. 212, 85 N.W.2d 323 (1957).
[19] See, In re Miles, 335 S.C. 242, 516 S.E.2d 661 (1999); Matter of Hirschfeld, 192 Ariz. 40, 960 P.2d 640 (1998); Iowa Supreme Court Bd. of Ethics v. Apland, 577 N.W.2d 50 (Iowa 1998); Columbus Bar Assn. v. Klos, 81 Ohio St.3d 486, 692 N.E.2d 565 (1998); Matter of Thonert, 682 N.E.2d 522 (Ind.1997); Matter of Cooperman, 83 N.Y.2d 465, 633 N.E.2d 1069, 611 N.Y.S.2d 465 (1994); In re Gastineau, 317 Or. 545, 857 P.2d 136 (1993); Cluck v. Commission for Lawyer Discipline, 214 S.W.3d 736 (Tex.App.2007); Wright v. Arnold, 877 P.2d 616 (Okla.App.1994).
[20] See, Iowa Supreme Court Bd. of Ethics v. Apland, supra note 19; Matter of Cooperman, supra note 19; In re Gastineau, supra note 19; Wright v. Arnold, supra note 19.
[21] See, In re Miles, supra note 19; Matter of Hirschfeld, supra note 19; Columbus Bar Assn. v. Klos, supra note 19; Matter of Thonert, supra note 19; Cluck v. Commission for Lawyer Discipline, supra note 19.
[22] See Robert L. Rossi, 1 Attorneys' Fees § 1.2 at 7 (2d ed. 1995).
[23] Brief for respondent in case No. S-07-942 at 10.
[24] See, State ex rel. Counsel for Dis. v. Wickenkamp, 277 Neb. 16, 759 N.W.2d 492 (2009); State ex rel. Counsel for Dis. v. Hubbard, 276 Neb. 741, 757 N.W.2d 375 (2008).
[25] See State ex rel. Counsel for Dis. v. Orr, ante p. 102, 277 Neb. 102, 759 N.W.2d 702 (2009).
[26] Id.
[27] State ex rel. Counsel for Dis. v. Wadman, 275 Neb. 357, 746 N.W.2d 681 (2008); State ex rel. Counsel for Dis. v. Beach, 272 Neb. 337, 722 N.W.2d 30 (2006).
[28] See State ex rel. Counsel for Dis. v. Boose, 277 Neb. 1, 759 N.W.2d 110 (2009).