# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2010AP1576-D & 2011AP1764-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against<br>Jeffrey A. Reitz, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>          Complainant-Respondent,<br>     v.<br>Jeffrey A. Reitz,<br>          Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST REITZ

| | |
|---|---|
| OPINION FILED: | March 29, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | |
|  COUNTY: | |
|  JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | |
|  DISSENTED: | |
|  NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there was a brief filed by *Jeffrey A. Reitz*, pro se.


For the Office of Lawyer Regulation, there was a brief filed by *Julie M. Spoke*, Office of Lawyer Regulation.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos. 2010AP1576-D & 2011AP1764-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Jeffrey A. Reitz, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant-Respondent,**

  **v.**

**Jeffrey A. Reitz,**

      **Respondent-Appellant.**

**FILED**

**MAR 29, 2013**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. Attorney Jeffrey A. Reitz appealed from a referee's report concluding that he engaged in professional misconduct and recommending that his license to practice law in Wisconsin be suspended for 12 months. This case was originally on the December 4, 2012 oral argument calendar. It was removed from the calendar after it was discovered that Attorney Reitz and the Office of Lawyer Regulation (OLR) were in agreement that the referee erroneously included factual findings in her report

that arose out of counts of misconduct that had been previously dismissed by the OLR. The parties were directed to file a stipulation identifying the specific findings of fact in the referee's report that related to dismissed counts and thus should not be considered by this court in reaching its final decision. The parties filed their stipulation on December 10, 2012, and identified 47 paragraphs in the referee's report that they believe were erroneously included and should not be considered. The parties also pointed out that paragraph two of the referee's report should be corrected to reflect the fact that Attorney Reitz was admitted to practice law in 1981 rather than 2001.

¶2 We agree with the parties that the 47 paragraphs from the referee's report identified in their stipulation related to counts that were dismissed by the OLR and thus should not be considered by the court in rendering its decision. We conclude that the referee's remaining findings of fact are supported by satisfactory and convincing evidence. We further determine that the appropriate sanction to impose for Attorney Reitz's misconduct is a ten-month suspension of his license to practice law in Wisconsin. In addition, we conclude that the full costs of the proceeding, which are $6,943.09 as of December 13, 2012, should be assessed against Attorney Reitz. We further conclude that, as part of the sanction for his misconduct, Attorney Reitz should be required to distribute all funds in his trust accounts to their rightful owners or, if those individuals cannot be located, Attorney Reitz should be required to transmit those

2

funds to the state treasurer's office as unclaimed or unidentifiable property.

¶3 Attorney Reitz was admitted to practice law in Wisconsin in 1981 and practices in Milwaukee. He has been disciplined on two prior occasions. In 2005, his license was suspended for five months for multiple counts of failure to act with reasonable diligence and promptness in representing a client; having a client who was not represented by counsel sign a release of Attorney Reitz's partner, prospectively limiting the partner's liability for malpractice; knowingly assisting another attorney in violating the rules of professional conduct; two counts of failure to keep a client reasonably informed about the status of a matter and failure to comply with reasonable requests for information; engaging in conduct involving dishonesty, deceit, fraud, or misrepresentation; failure to explain a matter to the extent reasonably necessary to permit a client to make informed decisions regarding the representation; and failure to take steps reasonably practicable to protect a client's interests upon termination of representation. In re Disciplinary Proceedings Against Reitz, 2005 WI 39, 279 Wis. 2d 550, 694 N.W.2d 894.

¶4 In 2009, Attorney Reitz's license was suspended for 90 days based on a finding that he had engaged in 15 counts of misconduct with regard to 15 separate clients. All of the counts involved Attorney Reitz's failure to give a chiropractor written notice that settlement proceeds had been received in several cases and by failing to promptly deliver to the

3

chiropractor the amount he was entitled to receive in accordance with documents signed by both the clients and Attorney Reitz's law firm entitling the chiropractor to payment out of settlement proceeds.  In re Disciplinary Proceedings Against Reitz, 2009 WI 90, 320 Wis. 2d 460, 769 N.W.2d 566.

¶5  On June 28, 2010, the OLR filed a complaint against Attorney Reitz alleging multiple counts of misconduct.  An amended complaint was filed on September 1, 2010.  The amended complaint alleged 30 counts of misconduct.  A separate complaint alleging five counts of misconduct was filed on August 2, 2011. The two cases were consolidated and Kim M. Peterson was appointed referee.

¶6  On March 30, 2012, the parties filed a stipulation whereby Attorney Reitz pled no contest to all five counts alleged in the August 2, 2011 complaint.  He also pled no contest to 17 counts alleged in the September 1, 2010 amended complaint.  The OLR agreed to dismiss the remaining 13 counts in the amended complaint.  The stipulation provided, "Reitz agrees that the referee may use the allegations of the [c]omplaint . . . and the [a]mended [c]omplaint . . . as an adequate factual basis in the record for a determination of misconduct as to each misconduct count to which Reitz has pled no contest."

¶7  The stipulation also provided that the OLR director and Attorney Reitz agreed that the appropriate level of discipline to impose for Attorney Reitz's misconduct in the two cases was a ten-month suspension of his license to practice law

4

in Wisconsin. The OLR director and Attorney Reitz also agreed that an appropriate condition of discipline was that Attorney Reitz be required, prior to petitioning for reinstatement, to provide the OLR with documentation that all funds in his trust account have been distributed to the rightful owners or, if those individuals cannot be located, that the funds be escheated to the state treasurer's office as unclaimed or unidentifiable property. The parties jointly requested the referee to file a report finding facts based on Attorney Reitz's no contest pleas, and the parties requested the referee to recommend that Attorney Reitz's license be suspended for ten months.

¶8 All five counts of misconduct alleged in the August 2011 complaint arose out of Attorney Reitz's representation of J.B. and/or P.B. In July 2007 J.B. and P.B. hired Attorney Reitz to represent J.B. in a personal injury case arising out of a motorcycle accident that occurred in Illinois. In July 2009 this court ordered Attorney Reitz's license suspended for 90 days effective September 14, 2009. By letter dated August 4, 2009, the OLR reminded Attorney Reitz of his obligations under SCR 22.26 stemming from his suspension, requiring him to notify all clients in pending matters both of the suspension and of his inability to act as their attorney after September 14, 2009. Attorney Reitz did not notify either J.B. or P.B. that his license was suspended.

¶9 On August 28, 2009, Attorney Reitz wrote to J.B. asking his consent to have Attorney James E. Parrot "assist us" with the case. The letter did not mention Attorney Reitz's

upcoming suspension. Attorney Reitz drafted a document titled "Client Consent to Employment of Another Lawyer," which was signed by J.B. on August 31, 2009. The agreement referred to the Reitz law firm's role as "co-counsel" with Attorney Parrot and said Reitz's firm "will retain responsibility for the performance of legal services" and "will share evenly with [A]ttorney James E. Parrot in the attorney's contingency fee." On September 15, 2009, a day after Attorney Reitz's license suspension began, Attorney Reitz sent J.B.'s file to Attorney Parrot.

¶10 On October 9, 2009, the OLR received an affidavit from Attorney Reitz in which he said he had notified, by certified mail, all of his clients in pending matters. The list of clients did not include either J.B. or P.B. On December 15, 2009, the OLR received a second affidavit from Attorney Reitz in connection with his reinstatement request. In that affidavit Attorney Reitz said he had complied with the provisions of SCR 22.26 following the suspension of his license. He acknowledged that notice had inadvertently not been sent to J.B.

¶11 In early 2008, P.B. spoke to Attorney Reitz about a medical malpractice claim arising from possible radial nerve damage she suffered on January 22, 2002. On January 22, 2003, P.B. filed an action against a hospital in Illinois. She was originally represented in that case by Attorney Michael Lavelle of Chicago.

¶12 Attorney Reitz made a verbal agreement with P.B. to handle her case. There was no written fee agreement. On

6

March 29, 2008, Attorney Reitz's employee wrote to Attorney Lavelle to formally ask to assume representation of P.B. The file was subsequently picked up from Attorney Lavelle's office.

¶13 From time to time Attorney Reitz would refer medical malpractice cases to Attorney Bill Walker. Attorney Walker met with Attorney Reitz's employee to discuss P.B.'s case.

¶14 P.B.'s case was voluntarily dismissed in April 2008 due to the ill health of Attorney Lavelle. Under Illinois law, there was a one-year deadline to reopen the case. A May 9, 2008 letter from Attorney Reitz's office to Attorney Lavelle stated that P.B.'s malpractice suit would be handled by Attorney Walker. That same day Attorney Reitz's office sent a letter to P.B. advising her the malpractice suit was being reviewed by Attorney Walker.

¶15 Attorney Walker did review the malpractice suit but declined to represent P.B. In mid-May 2008 Attorney Walker advised Attorney Reitz of his opinion that there were a number of substantial obstacles to the case, including insufficient evidence of negligence. Attorney Walker returned the case file to Attorney Reitz on May 22, 2008. Attorney Walker's office informed P.B. that the file had been returned to Attorney Reitz.

¶16 Attorney Reitz did not personally share with P.B. the negative evaluation of the medical malpractice claim by Attorney Walker. P.B. made repeated, frequent calls to Attorney Reitz's office asking about her malpractice suit. Attorney Reitz failed to return the calls. Each time P.B. would call Attorney Reitz's office, she was informed by a paralegal that Attorney Reitz was

aware of the April 8, 2009 deadline to reopen the case and that he was handling the matter. Attorney Reitz allowed the April 8, 2009 deadline to pass without taking any action.

¶17 The OLR's August 2011 complaint alleged the following counts of misconduct with respect to Attorney Reitz's handling of J.B. and P.B.'s cases:

> [COUNT ONE:] By failing to timely notify [J.B.], a client in a pending matter, of the suspension of his law license, Reitz violated SCR 22.26(1)(a) and (b)[1] and SCR 20:8.4(f).[2]

> [COUNT TWO:] By filing an affidavit with [the] OLR containing misrepresentations concerning his compliance with the terms and conditions of the suspension, Reitz violated SCR 20:8.4(c).[3]

---

[1] SCR 22.26(1)(a) and (b) states as follows:

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

[2] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

[3] SCR 20:8.4(c) says it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

8

[COUNT THREE:] By repeatedly failing to return client [P.B.'s] telephone calls and failing to provide requested information to her concerning the status of his efforts to reopen her medical malpractice claim or find an attorney to represent her in the matter, Reitz violated SCR 20:1.4(a)(3) and (4).[4]

[COUNT FOUR:] By failing to explain to client [P.B.] the ramifications of another attorney's negative assessment of the client's medical malpractice claim and failing to share that malpractice specialist's written evaluation of the claim with the client, Reitz violated SCR 20:1.4(b).[5]

[COUNT FIVE:] By failing to timely notify his client that he was unilaterally abandoning his efforts to reopen her medical malpractice claim or to find another attorney to handle her claim and failing to return her medical malpractice claim file to her, Reitz violated SCR 20:1.16(d).[6]

---

[4] SCR 20:1.4(a)(3) and (4) states a lawyer shall "(3) keep the client reasonably informed about the status of a matter; [and] (4) promptly comply with reasonable requests by the client for information; . . . ."

[5] SCR 20:1.4(b) provides:

A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[6] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

¶18 By virtue of the March 30, 2012 stipulation, Attorney Reitz pled no contest to all five counts.

¶19 Eight of the counts of misconduct in the September 1, 2010 amended complaint, to which Attorney Reitz pled no contest, involved untimely delivery of client trust account funds. In 1999, Attorney Reitz joined Michael Mandelman's law firm. The firm practiced primarily in the area of personal injury and criminal law. Prior to his association with Attorney Reitz, Mandelman had client trust accounts at M&I and TCF banks. When Attorney Reitz joined the firm in 1999, the firm used Mandelman's M&I trust account as its active trust account. Mandelman did not close the TCF trust account until December 2006. In December 2002 Mandelman and Attorney Reitz stopped using the M&I trust account and opened a new trust account at Tri City Bank. The M&I account remained dormant for at least six years.

¶20 In May of 2005, while Attorney Reitz's license was suspended, Mandelman stopped using the Tri City Bank trust account and opened a new trust account at Pyramax Bank. The Tri City account then remained dormant for more than three years. Mandelman's license to practice law was suspended for nine months effective June 21, 2006. Prior to that time a new trust account was opened at Pyramax Bank in the name of Reitz, Parker and Lawent, S.C. (RPL). In July and August of 2008, a majority of undistributed client funds in Mandelman's Pyramax trust account were transferred to the RPL trust account.

¶21 The OLR's September 1, 2010 amended complaint alleged that Attorney Reitz failed to distribute trust account checks to clients for periods ranging from one to more than seven years; deposited monthly settlement payments in his client trust account but failed to distribute the funds; failed to negotiate with subrogated carriers; failed to take steps necessary to resolve the division of ownership of trust account funds; failed to pay a client money withheld from a 2002 personal injury settlement until at least October 2008; and failed to distribute or reissue 47 uncashed checks written on his client trust account between 2000 and 2005; and, as of July 30, 2008, having an additional 14 checks outstanding for periods of at least three months and up to two years after Mandelman's suspension.

¶22 The OLR alleged, and by virtue of his March 30, 2012 stipulation Attorney Reitz agreed, that he violated SCRs 20:1.15(b) (in effect prior to July 1, 2004),[7] 20:1.15(d)(1) (effective July 1, 2004),[8] and 20:1.3.[9]

---

[7] SCR 20:1.15(b) (in effect prior to July 1, 2004) stated as follows:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[8] SCR 20:1.15(d)(1) provides:

11

¶23 By virtue of his stipulation, Attorney Reitz also admitted disbursing funds from his trust account that created negative balances with respect to the subsidiary accounts for two clients and with respect to a law firm subsidiary account for bank charges. He also admitted distributing funds such that there was a $9,000 shortage in funds that should have been held for clients in the RPL trust account as of July 31, 2008. Attorney Reitz admitted violating SCRs 20:1.15(e)(5)a. (effective July 1, 2004),[10] 20:1.15(f)(1)b. (effective July 1, 2004 through December 31, 2009),[11] and SCR 20:1.15(a) (effective prior to July 1, 2004).[12]

---

Notice and disbursement. Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[9] SCR 20:1.3 states "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[10] SCR 20:1.15(e)(5)a. provides:

Standard for trust account transactions. A lawyer shall not disburse funds from any trust account unless the deposit from which those funds will be disbursed has cleared, and the funds are available for disbursement.

[11] SCR 20:1.15(f)(1)b. provides:

A subsidiary ledger shall be maintained for each client or matter for which the lawyer receives trust

12

funds, and the lawyer shall record each receipt and disbursement of that client's funds and the balance following each transaction. A lawyer shall not disburse funds from the trust account that would create a negative balance with respect to any individual client or matter.

[12] SCR 20:1.15(a) (effective prior to July 1, 2004) provided as follows: Safekeeping property.

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

13

¶24 Attorney Reitz also admitted, by virtue of his stipulation, that by failing to create and retain complete trust account records for the RPL trust account, he violated SCR 20:1.15(e)(6).[13] He further admitted that by failing to provide RPL trust account records requested by the OLR and providing only incomplete and inaccurate records, he violated SCR 20:1.15(e)(7),[14] 20:8.4(h),[15] and 22.03(6).[16] He also

---

[13] SCR 20:1.15(e)(6) provides:

Record retention. A lawyer shall maintain complete records of trust account funds and other trust property and shall preserve those records for at least 6 years after the date of termination of the representation.

[14] SCR 20:1.15(e)(7) provides:

Production of records. All trust account records have public aspects related to a lawyer's fitness to practice. Upon request of the office of lawyer regulation, or upon direction of the supreme court, the records shall be submitted to the office of lawyer regulation for its inspection, audit, use, and evidence under any conditions to protect the privilege of clients that the court may provide. The records, or an audit of the records, shall be produced at any disciplinary proceeding involving the lawyer, whenever material. Failure to produce the records constitutes unprofessional conduct and grounds for disciplinary action.

[15] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

[16] SCR 22.03(6) provides:

In the course of the investigation, the respondent's wilful failure to provide relevant

14

admitted that by falsely certifying on his fiscal year 2007 State Bar of Wisconsin dues statement that he had filed overdraft reporting agreements with the OLR, and by falsely certifying on his fiscal year 2008 State Bar of Wisconsin dues statement that he had complied with the trust account recordkeeping requirements for the listed accounts, he violated SCR 20:1.15(i)(4).[17]

¶25 Attorney Reitz further admitted that by depositing earned legal fees for clients into his client trust account and distributing those fees through the trust account instead of through the law firm's business account, he violated SCR 20:1.15(a) (effective prior to July 1, 2004), and SCR 20:1.15(b)(3) (effective July 1, 2004).[18] He also admitted that by depositing checks to his client trust account that were

---

information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[17] SCR 20:1.15(i)(4) provides:

Suspension for non-compliance. The failure of a state bar member to file the certificate is grounds for automatic suspension of the member's membership in the state bar in the same manner provided in SCR 10.03(6) for nonpayment of dues. The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action.

[18] SCR 20:1.15(b)(3) provides:

Lawyer funds. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account.

15

payable to Attorney Mandelman, written on checks from an account from a California law firm that were allegedly in payment of law firm fees, he violated SCR 20:1.15(a) (effective prior to July 1, 2004), and SCR 20:1.15(b)(3) (effective July 1, 2004).

¶26 Attorney Reitz further admitted that by failing to file tax returns and pay tax on income earned by the RPL law firm he violated the standard of professional conduct established in cases, including In re Disciplinary Proceedings Against Owens, 172 Wis. 2d 54, 56, 492 N.W.2d 157 (1992), contrary to SCRs 20:8.4(f) and 20:8.4(c).

¶27 In addition, Attorney Reitz admitted that by failing to file an action on behalf of a client prior to the expiration of the statute of limitations, he violated SCR 20:1.3. The client subsequently obtained a money judgment against Attorney Reitz for $101,190.17. He admitted to another violation of SCR 20:1.3 by failing to either obtain and present a settlement offer to a minor child's parents, place the matter in litigation, or advise the clients he did not believe the case was worth pursuing and that they should pursue another attorney if they wished to proceed. Although a $5,000 offer to settle the claim had been tendered, Attorney Reitz never presented the offer to the minor's parents.

¶28 On June 15, 2012, the referee found that the parties' stipulation set forth an adequate factual basis for a determination of misconduct for each of the counts to which Attorney Reitz had pled no contest. The referee concluded that a 12-month suspension, rather than the ten months proposed by

16

the parties, was an appropriate sanction for Attorney Reitz's misconduct. The referee said the misconduct was serious and the trust account records maintained by Attorney Reitz were in a serious state of disarray. The referee said that due to the poor recordkeeping, Attorney Reitz's law firm overpaid itself fees from one trust account, resulting in a negative trust account balance. The referee also said Attorney Reitz's client trust accounts were used as a personal checkbook for the law firm's attorneys, with payments being made from the trust accounts to both Attorney Reitz and his partner on numerous occasions.

¶29 The referee said despite the fact that Attorney Reitz has been disciplined on two other occasions, he has continued to fail to comply with supreme court rules. The referee found it especially disturbing that while Attorney Reitz was being investigated by the OLR for trust account violations he was still committing additional misconduct. The referee concluded that the severity of the misconduct, the need to protect the public, and the need to impress upon Attorney Reitz the seriousness of his misconduct demonstrates that a 12-month suspension is appropriate. The referee also recommended that as a condition of reinstatement Attorney Reitz be required to provide the OLR with sufficient documentation to demonstrate that all funds in his trust accounts were distributed to the rightful owner, and the referee suggests that if Attorney Reitz's license is reinstated, the OLR should monitor his trust account activity for at least two years.

17

¶30 Attorney Reitz appealed raising two issues: (1) are many of the factual findings of the referee unsupported by the record and improperly relied upon in forming a basis for her recommendations; and (2) are the recommendations for sanction of the referee appropriate under the facts and findings of this case.

¶31 Attorney Reitz's appeal did not challenge the referee's findings of fact relating to those counts of misconduct to which he pled no contest. He argued, however, that many of the referee findings of fact related to the 13 counts of misconduct which were dismissed by the OLR. As to the appropriate sanction, Attorney Reitz argued that the ten-month suspension recommended by the parties, rather than the 12-month suspension recommended by the referee, was an appropriate level of discipline.

¶32 The OLR agreed that many of the referee's findings of fact related to misconduct counts that were dismissed. The OLR also agreed that a ten-month suspension was appropriate. In response to a court order, on December 10, 2012, the parties filed a stipulation identifying the findings of fact in the referee's report that relate to counts that were dismissed.

¶33 A referee's findings of fact will not be set aside unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. This court is free to impose whatever discipline it deems appropriate, regardless of the referee's recommendation. See In re

18

Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶34 After careful review of the entire record, we agree with the parties that the referee's findings of fact identified in their December 10, 2012 stipulation related to counts of misconduct that were dismissed. As a result we deem those findings of fact clearly erroneous and will not consider them in reaching our decision in this case. We adopt the referee's remaining findings of fact and further determine that those findings support the legal conclusion that Attorney Reitz engaged in all of the counts of professional misconduct set forth in the parties' stipulation.

¶35 We now turn to the appropriate level of discipline to impose for Attorney Reitz's professional misconduct. The majority of the misconduct counts in this case involve trust account violations. Trust account violations are serious. The comment to SCR 20:1.15 provides, "A lawyer must hold the property of others with the care required of a professional fiduciary." Attorney Reitz has admitted that he failed to create and retain complete trust account records and that he provided only incomplete and inaccurate records to the OLR in the course of its investigation. In a recent case involving trust account violations, we found instructive the South Carolina Supreme Court's holding in Matter of Miles, 335 S.C. 242, 516 S.E.2d 661 (1999): "When disciplinary counsel presents clear and convincing evidence of trust account violations or other inadequate recordkeeping, a lawyer's records

19

must be sufficiently detailed to overcome the allegations." Id. at 663. See In re Disciplinary Proceedings Against Weigel, 2012 WI 124, ¶47, 345 Wis. 2d 7, 823 N.W.2d 798.

¶36 Attorney Weigel's trust account violations resulted in the revocation of his license to practice law in Wisconsin. By Attorney Weigel's own admission, his law firm's trust account ran a deficit of between $100,000 and $1,000,000 for over 13 years. We stated, "A six- or seven-figure deficit in an account that holds client funds is an ethical failure of epic proportions" and "it would be difficult to imagine a more aggravated pattern of misconduct. . . ." As a result, we concluded that any sanction less than revocation would undermine the public's confidence in the honesty and integrity of the bar. Id., ¶52. Although Attorney Reitz's misconduct, in the management of his trust accounts and otherwise, is serious, it does not reach the "epic proportions" of the Weigel case and thus warrants a lesser sanction.

¶37 The OLR cited a number of cases in support of its recommendation that a ten-month license suspension would be an appropriate level of discipline. The OLR notes that in In re Disciplinary Proceedings Against Van Groll, 2005 WI 140, 286 Wis. 2d 41, 704 N.W.2d 905, the attorney's license was suspended for one year for nine counts of misconduct arising out of his handling of client trust funds, failing to provide full and truthful information during the OLR's investigation, filing false State Bar of Wisconsin certifications, and failing to file income tax returns for five years. In the OLR's opinion,

20

Attorney Reitz's misconduct is less serious than Attorney Van Groll's.

¶38 The OLR also notes that in In re Disciplinary Proceedings Against Scanlan, 2006 WI 38, 290 Wis. 2d 30, 712 N.W.2d 877, the attorney's license was suspended for six months for misconduct arising out of nine grievance matters consisting of practicing law while suspended, failing to deposit advanced fees in a trust account, failing to return an unearned fee, and failing to timely respond to the OLR's investigation.

¶39 The OLR also believes that Attorney Reitz's conduct is similar to that at issue in In re Disciplinary Proceedings Against Schuster, 2006 WI 21, 289 Wis. 2d 23, 710 N.W.2d 458, in which the attorney's license was suspended for nine months for various trust account issues and making misrepresentations to the OLR. The OLR says Attorney Reitz's misconduct is aggravated by the fact that he committed more violations than did Attorneys Scanlan or Schuster, and he also has a more serious disciplinary history. In mitigation of Attorney Reitz's misconduct, the OLR notes that Attorney Reitz has the absence of a dishonest or selfish motive and has cooperated with the OLR during the course of this disciplinary proceeding.

¶40 Upon careful consideration, we conclude that a ten-month suspension of Attorney Reitz's license to practice law in Wisconsin is an appropriate sanction. A ten-month suspension is generally consistent with the level of discipline imposed in prior cases and adheres to the court's general practice of imposing progressive discipline. We agree with the referee that

21

Attorney Reitz should be required to pay the full costs of the proceeding. We also deem it appropriate to require him to disburse all funds in his trust accounts to their rightful owners; if the rightful owners cannot be located, to transfer the funds to the state treasurer's office as unclaimed or unidentifiable property. Although the parties and the referee recommended that these disbursements should be made as a condition of Attorney Reitz's reinstatement, we find it appropriate to order the payments made as part of the sanction as well as a condition of reinstatement. We also agree with the referee that, upon his resumption of the practice of law Attorney Reitz's trust account should be subject to monitoring by the OLR for a period of two years.

¶41 IT IS ORDERED that the license of Jeffrey A. Reitz to practice law in Wisconsin is suspended for a period of ten months effective May 3, 2013.

¶42 IT IS FURTHER ORDERED that Jeffrey A. Reitz shall distribute all funds in his trust accounts to their rightful owners. If the rightful owners cannot be located, Jeffrey A. Reitz shall transfer those funds to the state treasurer's office as unclaimed or unidentifiable property. Jeffrey A. Reitz shall provide documentation to the OLR that all funds in his trust accounts have been so distributed.

¶43 IT IS FURTHER ORDERED that within 60 days of the date of this order, Jeffrey A. Reitz shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $6,943.09.

22

¶44 IT IS FURTHER ORDERED that Jeffrey A. Reitz shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶45 IT IS FURTHER ORDERED that, upon his resumption of the practice of law, Jeffrey A. Reitz's trust account shall be subject to monitoring by the OLR for a period of two years.

¶46 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).